MILO E. MARSH v. IRA C. BRISTOL ET AL.

*Landlord and tenant—Lease of premises for dwelling-house—Forfeiture—Forcible entry and detainer—Assault and battery—Contributory negligence.*

1. A tenant in arrears for rent, and who had otherwise forfeited the conditions of his lease, sued the agent of the landlord for damages for forcibly ejecting him from the leased premises (a dwelling-house), and was permitted on the trial to show his struggles and poverty, and his attempts to get the agent to relieve him against the conditions of the lease, and the chattel mortgage by which the rent was secured.

   *Held*, that the purport of this was to impress the jury against

the defendant as a hard-hearted landlord's agent, whose unreasonable conduct justified plaintiff in breaking his own contract, and refusing to recognize rights about which there was no possible question; all of which was not only irrevelant, but greatly prejudicial, the error being plain and serious.

2. Where a building was leased "to be occupied for a dwelling-house," and the tenant's wife rented another house, and moved into it with her family, her husband taking his meals there but continuing to sleep in the first house, in which he had left a portion of his household goods, which were covered by a mortgage given to secure the payment of rent under the first lease, and which the landlord's agent refused to allow the tenant to remove, who, for two nights prior to being ejected from the building, slept in the house leased by his wife, leaving no one in the other building,—

*Held*, that the removal in permanency of the tenant's family, with his approval and acquiescence, put an end to his dwelling in the house first leased, and his partial occupancy to keep his goods there was not a residence for the purposes of a dwelling.

3. An occupancy of leased premises for dwelling purposes very seldom leaves a house without some inmate at all hours, and never for any considerable lenght of time, and is fairly calculated to secure such protection from fire and thieves as cannot be found in a vacant house.

4. Under the law existing before the enactment of the forcible entry and detainer statute (How. Stat. §§ 8284, 8285), the default of a tenant in payment of rent justified the landlord in entering, and using sufficient force to eject the tenant. The statute changing this right does not make the continuance in possession any less unlawful, but, in the interest of public tranquility, provides against breaking the public peace, and in doing so adopts the definitions of the law as existing on the subject of forcible entries, which were already indictable in other cases, and by this prohibition were made indictable in these cases. But where there has not been a forcible entry, the statute does not forbid retaining possession by force, unless the possession is unlawful, and against the rights of the person kept out. How. Stat. §§ 8284, 8285; *Farmer v. Hunter*, 45 Mich. 337.

5. On a review of the decisions of the Michigan Supreme Court, defining what will amount to a forcible entry,—

*Held*, that it is entirely well settled that unless the tenant is driven off either by *actual* force applied to him, or as the only apparent way of avoiding its use against him at the time, he cannot be regarded as forcibly expelled, and there is no forcible entry. *Latimer v. Woodward*, 2 Doug. 368; *Davis v. Ingersoll*, Id.

372; *Harrington v. Scott*, 1 Mich. 17; *Seitz v. Miles*, 16 Id. 456; *Hoffman v. Harrington*, 22 Id. 52.

6. The object of the statute against forcible entries is not to aid men in violating their obligations, and holding what they have no right to hold, but merely to prevent riotous and forcible measures in breach of the peace.

Error to Ingham. (Gridley, J.) Argued February 3, 1887. Decided April 14, 1887.

Case. Defendants Ira C. and Warren L. Bristol bring error. Reversed. The facts are stated in the opinion.

*Mitchel & McGarry*, for appellants.

*Johnson & Rouse* (*S. L. Kilbourne*, of counsel), for plaintiff.

CAMPBELL, C. J. Marsh, the plaintiff, sued defendants, Ira C. Bristol and Harmony B. Bristol, his wife, and Warren L. Bristol, their grown-up son, for assault and battery alleged to have been committed September 29, 1884. A criminal proceeding also seems to have been had, with what result does not appear, and is probably of no consequence. The jury rendered a verdict of $4,500 against all the defendants.

The act complained of arose out of difficulties between the plaintiff and Ira C. Bristol, who had rented plaintiff a house in Lansing, acting as agent for the owner, Mrs. Knapp, who was his daughter, and lived in New York. Prior to April, 1884, the same property had been leased to plaintiff for the year then ending. Plaintiff, in the previous winter, had met with an accident, falling upon the ice, and had been laid up awhile from it, and had not paid his rent, on which remained due about $65. On making the new lease, which, like the former one, called for monthly payments of $10 in advance, it was arranged that security should be given for payment of the arrears, and a chattel mortgage was given a few days

thereafter, payable on the first of December, 1884, covering some household furniture and a few books. This mortgage, which ran to Mrs. Knapp, among other things forbade removing the property from the leased premises, and provided, in case it was attempted without written consent, that the money should become payable at once. The mortgagee was also authorized, at any time, deeming the property insecure, to take possession, and store it until sale or payment.

The lease contained a provision requiring the premises "to be occupied for a dwelling-house only," and forbidding subletting or assigning without written assent.

In the early part of September, plaintiff's wife rented another house, called the "Seager house," nearer the business part of Lansing, and not far from the middle of the month moved into it with her family, plaintiff getting his meals there, but continuing to sleep in a room in Mrs. Knapp's house. On September 27 and 28 he slept in the Seager house, leaving no one in the Knapp house. Defendant Ira C. Bristol had refused to let the goods mortgaged be moved away, and plaintiff did not surrender possession. On September 29, 1884, a lady who desired to rent the house, if pleased with it, was taken up with plaintiff by Ira C. Bristol in his buggy. Mrs. Bristol was also there. After the lady had looked over the house and was satisfied with it, and left, some conversation took place between the parties, upon which they do not entirely agree. According to plaintiff, Mr. Bristol asked him what he would do, and plaintiff told him, in substance, that he would get Mr. Nichols to become security on the chattel mortgage, and would pay the arrears of rent, if Bristol would let him remove the mortgaged property to the Seager house, where he should have opportunity to see it from time to time; and that he would not do anything else. Bristol would not, as he says, assent to this. It was then proposed to have the mortgaged goods marked in some way, to distinguish them from others left in the house which were

not marked, and this was done. After this the testimony is at variance upon what was done. Mr. and Mrs. Bristol both testify that after some discussion Marsh agreed to quit and let the new tenant come in, and allow his goods to be stored in a room in the house. Plaintiff says that, after the identification of the goods, there was a further conversation about his going and leaving the goods stored in the house, which he refused to do; that thereupon Bristol, producing the chattel mortgage, or a copy of it, and the lease, asserted that he took possession of the house and of the mortgaged goods, and proceeded to put the rest of the goods out of doors. Plaintiff denied his right to do so without legal process, and remonstrated, and asked Bristol if he meant to persist. Bristol said he did, and plaintiff said he would go down town and get an officer or somebody to put a stop to it.

" At that he passed me, and went out on the porch. I went to Johnson's, next door, and Mrs. Johnson was there, and I told her Mr. Bristol was trying to force me from the house. I went down town; tried to find the prosecuting attorney, and tried to find the marshal."

After Marsh had left, Bristol proceeded to shut up the house, and fasten the doors. Plaintiff, after some interval, came back alone. The testimony conflicts whether the front door was locked. Bristol says it was, and that plaintiff broke it open. Plaintiff says he got it open by pushing the knob, and just as he got inside he met Bristol, who ordered him out. Bristol attempted to seize plaintiff by the shoulders, and plaintiff seized him by the beard, and whirled him out of the door, and attempted to shut it on him, when he called for help, and his son, Warren Bristol, came up, and together they forced the door open, and after a scuffle plaintiff rushed into a bed-room on the same floor, where they followed him, and he ordered them off the premises. They took him up and carried him out, he all the way resisting and seizing hold of what he could to stop them, and, as he says, being injured by the collision, and they put him out of the front door, as

he says, with a push which threw him against a post, when he fell down, and received the bruises which he claims pro-duced serious injury.

The testimony for the defense very explicitly denied the most important part of plaintiff's testimony so far as on the theory of the trial it warranted recovery. It will not be nec-essary, in our view of the case, which has not changed since the argument, to consider the conflict.

The record contains a very large mass of testimony upon outside equities, which was objected to but admitted, and which, although on the argument admitted by plaintiff's counsel to be immaterial, evidently had more to do with the result than the legal merits of the controversy, and produced a somewhat remarkable verdict. It is evident from the rec-ord that the trial was made very sensational, and conducted in a way not calculated to lead to an impartial verdict.

It was admitted on the argument that plaintiff was in two months' arrears for rent, and subject to any consequences which that would legally involve. Nevertheless, there was testimony admitted to show plaintiff's struggles and poverty, and his attempts to get Bristol to relieve him against the conditions of his lease and mortgage The purport of all this was to impress the jury against him as a hard-hearted landlord's agent, and that his unreasonable conduct justified plaintiff in breaking his own contract, and refusing to recog-nize rights about which there was no possible question. All this was not only irrelevant, but it was greatly prejudicial, and, when objected to, was admitted with remarks that indi-cated it was thought very material. Of course, unless regarded as relevant, it would all have been ruled out. A case so largely filled out with personalties and supposed hard-ships could not be cured by any charge, and manifestly was not here. The error is plain and serious.

But, as the law points on the undisputed facts are the most

important, a brief statement of their purport, stripped of extraneous matter, will explain them best.

The court charged the jury, in substance, that, in order to put defendants entirely in the wrong, there must have been a forcible entry upon plaintiff's possession, and that, if Bristol had got into peaceable and lawful possession, he had a right to use sufficient force to put plaintiff out, and keep him out. The whole question was made to turn on the rightfulness of Bristol's resumption of possession. Pending the delivery of the charge, and in a manner which was not, in our opinion, a proper one, plaintiff's counsel interrupted the court, and propounded this as a charge, which they thought a proper one:

" Should you find that the possession of the defendants, at the time plaintiff returned from town and re-entered the house, was not acquired by forcible entry under the instructions given you, then the defendants might lawfully prevent his re-entering the house by force, and, after the entry, might lawfully put him out by force; and, though they used more force than necessary in so doing, still, if the acts of the plaintiff in resisting their efforts to put him out were contributory to the injuries he received, then the defendants are not liable therefor."

As there can be no doubt, on plaintiff's own showing, that his resistance was directly contributory to the result, the case was legally reduced to the one main question whether he had a right to resist his removal. He had no such right, as the court charged, if Bristol was lawfully in possession. And the inquiry arises whether the charge on the right of possession was correct.

To determine this, it is necessary to understand the position of the parties. The lease had become forfeited both by failure to pay rent, and by ceasing to use the house as a dwelling.[1] This latter condition was made a ground of forfeiture as well as the other, and reasonably so. The lessee had

[1] The lease waived " demand of payment and possession."

no right to assign or sublet, and the occupation could only be for his own dwelling. An occupancy for dwelling purposes very seldom leaves a house without some inmate at all hours, and never for any considerable length of time. It is fairly calculated to secure such protection from fire or thieves as cannot be found in a vacant house. The removal in permanency of plaintiff's family, with his approval and acquiescence, put an end to his dwelling there, and his partial occupancy to keep his goods there was not a residence for the purposes of a dwelling, as he explains it. Its avowed purpose to aid in coercing or persuading Bristol to consent to the removal of the goods would not change its character in plaintiff's favor, if at all. It is not disputed, and was not on the argument, that plaintiff was holding over without right, after his lease had become forfeited.

This being so, he had concurred in exhibiting the house to a proposed tenant, and, while he and Bristol were together in the house, does not appear to have indicated to her that she could not have it. Whether this would amount to a surrender we need not consider now, as it is not necessary. We refer to it to indicate that it has not been overlooked.

Under the law as it existed before the statute, the default of plaintiff under the lease would have justified Bristol in entering, and using sufficient force to put him out. The statute changing this right does not make the continuance in possession any less unlawful, but, in the interest of public tranquility, provides against breaking the public peace. In doing so it adopts the definitions of the law as existing on the subject of forcible entries, which were already indictable in other cases, and by this prohibition were made indictable in these cases. It provides that a person put out by forcible entry may be restored to possession. How. Stat. §§ 8284, 8285. But where there has not been a forcible entry, it does not forbid retaining possession by force, unless the possession is unlawful, and against the rights of the person kept out.

65 MICH.—25.

Id. ; *Farmer v. Hunter*, 45 Mich. 337.    Plaintiff here had no rights in the land.

As our own decisions have for many years defined very fully what will amount to a forcible entry, it would not be proper for us to look outside of them for any other rule.    In *Latimer v. Woodward*, 2 Doug. (Mich.) 368, it was held that forcible detention was no proof of forcible entry.    In that case, possession was got by procuring the key without the tenant's knowledge or permission, and maintaining forcibly against him, on his appearing, the possession so obtained, and it was held no case was made out.    In the previous case of *Davis v. Ingersoll*, reported in note, 2 Doug. (Mich.) 372, it had been held that nothing came within the statute which would not have been indictable force under it, and that proof which would not maintain a criminal conviction was insufficient; and the ground taken for reversal of the proceedings below was that possession should have been taken with violent measures or actual force and arms, or with some circumstances of actual violence or terror.    In *Harrington v. Scott*, 1 Mich. 17, it was held that the proceedings to restore possession for forcible entry or detainer were in their nature criminal, and required the same kind of proof.

" The language of the complaint is not satisfied by proof that one of the defendants pounded on the door of the building.    There should have been proof of such facts as would amount to a breach of the peace.    There is an entire absence of proof going to show either that the entry was made by the defendants with strong hand and multitude of people, or that the premises were with strong hand detained by them.    The testimony fully establishes the fact that the defendants repaired *alone* to the premises, and that but one of them, without doing any act calculated to excite a breach of the peace, re-entered into possession."

It was claimed by plaintiff that *Seitz v. Miles*, 16 Mich. 456, lays down a different rule, and dispenses with the element of force as against the original possessor.    That case makes no such change.    The disseizor procured a writ of resti-

tution apparently regular, and went with an officer, who asserted possession under it, and threatened to put the possessor out by force, and the party left under this menace. That was a very plain case of forcible removal. The rule is very well settled that when an officer, under color of process, threatens to exercise it, there is no necessity that the party resist it in order to make the act a trespass, for no one is bound at his peril to run the risk of resisting the officers of the law in order to have the benefit of a claim of duress. The threat to use a legal instrument, and compel submission to it, is as much an act of force as the production of a weapon, and is, if done maliciously, and with known absence of authority, a great legal wrong. A present threat to use force, with apparent means of doing so, is clearly within the law. That case does not attempt to criticise the earlier decisions, and does not disturb them.

The case of *Hoffman v. Harrington*, 22 Mich. 52, is quite analogous to this case in principle, except that the entry was made when no one was on the property. Hoffman entered on land that had for some time been used by Harrington for storing spars, and removed the spars, and fenced the lot. Harrington then made a forcible attempt to remove Hoffman, and got in, and Hoffman successfully and forcibly expelled him, and was held not to have made a forcible entry in the first place. That case referred to *Seitz v. Miles* in support of the doctrine that force must have been used or menaced in order to make a forcible entry, and held that a forcible detainer under a good claim was lawful, and that the force would not relate back to qualify the first entry, and could not impair the rights of the party who used it. It was further said that leaving goods on the premises could not prevent making a peaceable entry, as force against property was no breach of the peace, and the force to make it unlawful must be against the tenant himself. In that case the

property was actually put off, but that was held not to bring it within the statute.

It is entirely well settled that unless the tenant is driven off either by actual force applied to him, or as the only apparent way of avoiding its use against him at the time, he cannot be regarded as forcibly expelled, and there is no forcible entry.

In the present case the court refused several charges which were based upon the decisions before referred to, and which we think were sustained by the testimony. But beyond this the charges actually given were not in harmony with those cases. The charge was correct in so far as it held that, if Bristol had been left in peaceable possession, he could defend it, but was misleading as to how that could be brought about. The court charged, in regard to this matter, on three different theories on what would prevent the entry from being lawful:

*First,* a voluntary surrender by Marsh would justify the holding. *Second,* leaving the house by Marsh, under pressure of immediate force exhibited and threatened, was no surrender, and would not justify the entry. These were substantially correct. But, *thirdly,* the court said:

"If neither of these two propositions are correct, why as to the other, whether he left for a temporary purpose, in view of threats that were made by Bristol, not to give up the possession, but temporarily, to acquire and procure needed assistance in maintaining his own previous possession of the premises, why that would not constitute, on the part of the defendants here, a lawful peaceable possession of the premises."

There was nothing in the record to justify any such proposition. The only force used or threatened was the removal from the building of certain personal property, which, as held in *Hoffman v. Harrington,* was no breach of the peace. Plaintiff does not testify that Bristol used any force against him personally, or threatened any force against his person

absolutely or conditionally. The only reference to such force was in plaintiff's own abstaining from himself originating a breach of the peace. He does not testify that he was afraid of Bristol, or that he did not think he could successfully resist him. He was a young man, and Bristol an old one, and in the second meeting plaintiff did resist him, and put him forcibly out of the house. Bristol was on the premises by his consent and acquiescence, and not only so, but, as plaintiff himself shows, was there by his request and pro-curement, and was there for the purpose of arranging with a · new tenant. If the fact that plaintiff then saw fit to remain would prevent Bristol from putting him off by force, it did not make Bristol's remaining there, with or without per-mission, a forcible expulsion of plaintiff, who might have stayed, had he seen fit to do so, until Bristol left, or at-tempted to put him out, neither of which happened. As held in *Hoffman v. Harrington*, Bristol, as lawful owner, had a right to defend his possession if he got it without force. He had a better right than plaintiff, whose duty it was to surrender possession, and whose only possible right to resto-ration to possession, once left, depended on his having been made to leave by acts or threats of violence. Bristol had a right to get rid of plaintiff by any means not forcible. But he neither threatened nor defrauded plaintiff. He claimed possession as his right, and that was all. · At the time when plaintiff left, according to his own testimony, Bristol was not inside of the house, but had gone out upon the porch, upon plaintiff's saying he should go and get some one to stop his proceedings; yet plaintiff went out and down street, leaving the house open as before. After plaintiff went down street, there was nothing to keep Bristol out, and he went in and stayed in.

The object of the statute against forcible entries is not to aid men in violating their obligations, and holding what they have no right to hold, but merely to prevent riotous and

forcible measures in breach of the peace. Bristol and his principal were the parties wronged by plaintiff's continuance in possession against right. By going into possession without breaking the peace, Bristol committed no wrong in claiming possession, and in remaining there peaceably; and, this being so, by plaintiff's own showing, plaintiff himself was the aggressor to regain a wrongful occupancy. This the law will not permit.

The facts, as shown by plaintiff, showed a perfect right in Bristol to resist him on his return and put him out, and, under the instruction which plaintiff's attorney finally submitted as what he was willing to abide by, a verdict should have been ordered for the defense.

The rulings referred to were erroneous, and, had they been given as they should have been, we do not conceive that the other errors assigned would have become very important. We do not, therefore, deem it necessary to discuss these questions, although we are not to be regarded as deciding them.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.