MELVIN E. VANDUSEN v. FRANCIS LETELLIER ET AL.

*Master and servant—Safe place to work—Inspection—Negligence— Fellow-servants—Delegation of master's duty—Respondeat superior—Evidence—Res gestae.*

1. The duty of inspection, when required by the circumstances of the case, cannot be delegated by the master in such manner as to avoid responsibility.

So *held*, where a firm of lumber-manufacturers,—none of the members of which undertook to personally supervise the manufacture of lumber at the point where the mill was located, and all of whom resided in another county,—employed a general foreman or superintendent who was to look after the sawing of the lumber and in a general way the entire business, who employed competent men to inspect the docks upon which the lumber was placed preparatory to piling, and the posts and stringers supporting the same, one of which docks fell by reason of the breaking of one of said posts, which was weakened where the stringer was mortised in by reason of dry-rot not visible on an outward inspection of the post,—the mortise being covered by a plank which was not removed at time of inspection,—and injured an employé, who was awarded damages for the injuries thus sustained.

2. The following propositions are summarized from the opinion of Mr. Justice MORSE, in which LONG, J., concurred:

*a*—The circuit judge was right in instructing the jury that, if the defendants themselves could have discovered the defect in the dock—the fall of which injured plaintiff—by exercising reasonable care and diligence, they were responsible, notwithstanding they had employed skillful and competent persons to

78 492
81 431

78 492
84 104
84 295

78 492
87 455

78 492
89 262

78 492
90 571

78 492
94 615

78 492
97 332
97 343

78 492
103 209
103 211
103 222

78 492
105 269

78 492
106 612

78 492
107 595
107 610
108 12
108 16

78 492
110 514

78 492
114 86

78 492
124 42
124 43

78 492
127 97

78 492
s44NW 298
s44NW 572
129 388
129 389
129 ²488
129 685

78 492
s44NW 572
130 ¹616

78 492   78 492
150 ¹306

78 492
s44NW 572
132 ²377
132 ²379

78 492
136 ²332

look after the docks, and had furnished them with the proper materials for repairing the same.

*b*—It is well settled by all of the authorities that the master must provide his servant with a safe place to work in, and furnish him with suitable machinery and appliances with which to perform such work; and it is his duty to keep such machinery and appliances in good repair. If he cannot do this personally he must provide some other person to take his place in this respect, and the person to whom this duty is delegated,—no matter what his rank or grade, or by what name he may be called,—cannot be a servant in the sense or under the rule applicable to injuries occasioned by fellow-servants.

*c*—In order to keep such machinery and appliances safely in repair, the law makes it the duty of the master to make all needed inspections and examinations; and he cannot escape responsibility by delegating this duty to one who, in other respects, may be a fellow-servant of the person injured by the failure to properly perform this duty. *Swoboda v. Ward*, 40 Mich. 420; *Mining Co. v. Kitts*, 42 Id. 39; *Parkhurst v. Johnson*, 50 Id. 70; *Ryan v. Bagaley*, Id. 179; *Huizega v. Lumber Co.*, 51 Id. 272; *Smith v. Car Works*, 60 Id. 502; *Marshall v. Furniture Co.*, 67 Id. 167.

*d*—From all the circumstances of the case, it was for the jury to determine whether the inspection, as made, was made at the particular spot where the post broke, and whether, if made there, it was a sufficient inspection to look at it, or sound it with a hammer or other instrument, without tearing off the plank which was nailed over the mortises and tenons, or without cutting or boring into the wood.

*e*—It was not error for plaintiff to show what wages he commonly earned, but it was not proper to show that he had no other means of support than day-labor, which fact was immaterial to the issue, and an indirect way of bringing the poverty of plaintiff before the jury, which is not permissible in actions of this character. *Marsh v. Bristol*, 65 Mich. 383.

*f*—An admission by defendants' vice-principal of knowledge, before the accident, of the particular defect causing it, made the next day and away from the place where it happened, is inadmissible. *Railroad Co. v. Coleman*, 28 Mich. 440; *Ruggles v. Fay*, 31 Id. 141; *Mabley v. Kittleberger*, 37 Id. 360; *Gates v. Boom Co.*, 70 Id. 309; *Patterson v. Railway Co.*, 54 Id. 92; *Stebbins v. Township of Keene*, 55 Id. 552; *Wormsdorf v. Railway Co.*, 75 Id. 476.

Error to Osceola. (Judkins, J.) Argued November 14, 1889. Decided December 28, 1889.

Negligence case. Defendants bring error. Reversed. The facts are stated in the opinion.

*J. C. FitzGerald* ( *Charles Chandler* and *Francis A. Stace,* of counsel), for appellants, contended:

1. Personal negligence is the gist of this action, and in order to recover the plaintiff must show affirmatively by competent evidence that the defendants were guilty of such negligence. He must show that the docks were not inspected in a reasonably careful manner, and that such want of careful inspection was in consequence of the negligence of the defendants; citing *Railroad Co. v. Judson,* 34 Mich. 506; *Mining Co. v. Kitts,* 42 Id. 34; *Brown v. Railway Co.,* 49 Id. 153; *Henry v. Railway Co.,* Id. 495; *Mitchell v. Railway Co.,* 51 Id. 236; *McPadden v. Railroad Co.,* 44 N. Y. 478; *Malone v. Hathaway,* 64 Id. 5.

2. The mere fact that the dock fell in consequence of the timber composing it being defective is not evidence of negligence in the defendants; citing *Railroad Co. v. Kirkwood,* 45 Mich. 51; *Henry v. Railway Co.,* 49 Id. 495; *Warner v. Railway Co.,* 39 N. Y. 468.

3. An employer is not an insurer nor guarantor of the safety of his employé; citing *Batterson v. Railway Co.,* 49 Mich. 184; *Beaulieu v. Portland Co.,* 48 Me. 291; *Railway Co. v. Troesch,* 68 Ill. 545; *Caldwell v. Brown,* 53 Penn. St. 453; *Slater v. Jewett,* 85 N. Y. 61.

4. Negligence cannot be presumed, but must be affirmatively proved, and in the absence of proof the presumption is that the master has done his duty; citing *Davis v. Railroad Co.,* 20 Mich. 105; *Railroad Co. v. Judson,* 34 Id. 506; *Foley v. Railway Co.,* 48 Id. 622; *Brown v. Railway Co.,* 49 Id. 153; 3 Wood's Railway Law, § 392.

5. Evidence, to be sufficient, must be of such a character that a jury may therefrom reasonably and properly conclude that there was negligence; a mere *scintilla* of evidence, or evidence from which a jury may surmise that there was negligence somewhere, is not sufficient; citing *Beaulieu v. Portland Co.,* 48 Me. 291, *Baulec v. Railroad Co.,* 59 N. Y. 356; *Cotton v. Wood,* 8 C. B. (89 Eng. C. L.) 566.

6. The submission of an action for negligence to a jury is not authorized where the evidence on the part of the plaintiff is equally consistent with the absence as with the existence of negligence, as in such case the evidence fails to establish neg-

ligence; citing *Ellis v. Railway Co.*, L. R. 9 C. P. 551, and two cases last above cited.

7. Plaintiff was bound to prove that the defect which caused the accident was known to the defendants, or that they could have ascertained it by the exercise of reasonable care, and not having done this he cannot recover; citing *Davis v. Railroad Co.*, 20 Mich. 105; *Railroad Co. v. Huntley*, 38 Id. 537; *Warner v. Railway Co.*, 39 N. Y. 468; *Malone v. Hathaway*, 64 Id. 5; *Faulkner v. Railway Co.*, 49 Barb. 324; *Smith v. Railway Co.*, 42 Wis. 520; *Provision Co v. Hightower*, 92 Ill. 139; *Riley v. Steamship Co.*, 29 La. Ann. 791.

8. Having used ordinary or reasonable care in the selection of trustworthy men, and furnished them with suitable means to perform the services in which he employed them, the master is not answerable for injury received by an employé in consequence of the negligence of his fellow-servants engaged in the same service; citing *Smith v. Railway Co.*, 46 Mich. 258; *Hoar v. Merritt*, 62 Id. 386; *Malone v. Hathaway*, 64 N. Y. 5; *Johnson v. Tow-boat Co.*, 135 Mass. 209.

9. If there was any negligence in the failure to discover and repair the defect, it was the negligence of the dock inspector and repairers, who were fellow-servants of the plaintiff, for which defendants are not liable; citing *Davis v. Railroad Co.*, 20 Mich. 105; *Railroad Co. v. Dolan*, 32 Id. 510; *Mining Co. v. Kitts*, 42 Id. 34; *Railroad Co. v. Smithson*, 45 Id. 212, 217; *Railroad Co. v. Gilbert*, 46 Id. 176; *Greenwald v. Railroad Co.*, 49 Id. 197; *Sell v. Lumber Co.*, 70 Id. 479.

10. All the witnesses in the case who attempt to describe this defect agree that it was in such a place as to be entirely hidden, and not to be discovered by ordinary means of inspection, and, it being actually unknown to defendants, no cause of action exists; citing *Warner v. Railway Co.*, 39 N. Y. 468; *Malone v. Hathaway*, 64 Id. 5; *Railway Co. v. Troesch*, 68 Ill. 545; *Provision Co. v. Hightower*, 92 Ill. 139; *Smith v. Railway Co.*, 42 Wis. 520; *Morrison v. Construction Co.*, 44 Id. 405.

*Charles A. Withey* (*Ransom Cooper*, of counsel), for plaintiff. Brief confined to a discussion of the testimony, and review of cases cited by defendants' counsel.

MORSE, J. The plaintiff, on May 8, 1888, was severely injured by a fall, while in the employ of the defendants, sorting lumber at their mill in Rose Lake, Osceola county.

He had been working for them but one day and a half. The mill-yard was furnished with a number of docks connected with the mill. These docks were arranged in parallel lines, running north and south, and connected by two or more cross-docks, and having tramways on the ground below and between them. These docks were about 12 feet wide, and from 7 to 16 feet high from the ground. They were on a level with the platform of the mill at the end where the lumber came from the saw. They were built of timber, and covered with two-inch plank. As the lumber was sawed, it was loaded upon carts, and wheeled out upon these docks. It was sorted and distributed along the sides of the docks opposite and above the piles on the ground, ready for the pilers, who took it from the docks, and piled it on the spaces along the tramways, when it could readily be loaded on the tram-cars.

At the time of his injury the plaintiff was engaged in wheeling lumber from the mill, pushing the cart before him, loaded with green hemlock plank, upon one of the central docks, known as "Dock 6." Another cart also loaded with hemlock plank, was being pushed ahead of him by a young man named Henry Oakes. On the sides of this dock, waiting for the pilers, was an unusually large quantity of lumber, which had been placed there during the day by the plaintiff and others; and this had accumulated to a large amount at the place where the accident occurred. There was also at this place a short plank, accidentally left by some one, and which did not belong there. The wheel of Oakes' cart struck this short plank, and shook up and disarranged Oakes' load, so that he had to stop and straighten it up. This stopped the cart of plaintiff, who went forward, and helped Oakes to re-arrange his load. As plaintiff stepped back to his own

cart, and was about to start it, the dock gave way, and the plaintiff fell with it.

The negligence alleged in the declaration is that, at the point where the plaintiff was injured, the defendants had grossly, carelessly, and negligently allowed the posts, timbers, and braces of which the dock was constructed to become rotten and in a dangerous condition, and without the knowledge of the plaintiff, or notice to him. The plaintiff recovered a verdict and judgment for the sum of $3,250.

There is no claim of any contributory negligence on the part of the plaintiff; but defendants' counsel strenuously insisted on·the trial, as they now insist here, that there was not a particle of evidence tending to show any negligence on the part of the defendants. It is claimed that the portion of the dock that fell was built only about five or six years before the accident; that it is not contended by plaintiff that the dock was improperly constructed; and that it was clearly proved, without any contradiction, that it was built of sound material, and in a good and substantial manner. The mill and docks were built by Kellogg & Sawyer. The defendants purchased the property in January, 1886.

It is contended that the proofs show that at the time of the purchase they made a careful and particular examination of the docks, and all were found to be in a safe, good condition, and sound; and that they have ever since kept and employed men whose duty it was to inspect the docks, and keep them in repair, and have always provided sufficient and suitable materials for that purpose. That no charge is made by plaintiff that the persons so employed to inspect and repair the docks were incompetent, untrustworthy, or in any way unfit for the duty assigned them; and that it was proven without contra-

diction that they were careful, competent, skilled, and trustworthy. That this dock, where the injury occurred was, within a few days of its falling, examined by one of these men, Mr. Reasner, and as careful and thorough an inspection made as was possible without taking it to pieces. No defect was discovered. That the dock would not have given way had it not at the time been overloaded with a great quantity of lumber, coupled with the further fact that it had a concealed defect, which could not possibly have been discovered without the taking of the dock to pieces. That there is no evidence tending to show that either of the defendants or their foreman, Hadden, had any notice of this hidden defect, and that the proofs show they had no such notice. Upon this claim of facts, the court below was requested to take the case from the jury and to direct a verdict for the defendants.

The dock was built upon posts inserted in or resting upon mud-sills at the ground. These posts were of pine, 6 by 8 inches, and the mud-sills 6 by 8, 6 by 10, and 8 by 8. The stringers were 6 by 10. They were halved at the post where they joined together, and the post was tenoned to the two halves clear through, and a plank nailed on the outside to prevent their hauling apart. On each side of the post were braces, 4 by 4, from the stringers to the post, which were mortised and tenoned in. There were also other braces, which made the support of the docks sufficient and safe as long as the material was sound of which they were composed.

It appears from the testimony on the part of the plaintiff that the cause of the falling of the dock was the breaking of the stringers and posts sustaining the floor of the dock at the place where the plaintiff and the others stood; that the stringers and posts were rotten where the

stringers were mortised or tenoned into the posts. At least one stringer and one post, where the stringer was tenoned in, on the east side of the dock, were broken on account of rottenness at the place where they were mortised together. This rottenness was described by some of the witnesses as "a sort of dry-rot." None of. the plaintiff's witnesses saw this rottenness until after the break, and they do not state whether this rottenness extended to the surface of the timber so that it was discernible. On the part of the defendants, it was shown that, where the break occurred, only one post broke, and that on the east side of the dock; that it broke where the stringer was mortised in, and broke off the stringer where it was tenoned; that this was occasioned by dry-rot on the inside of the timber; and that the outside looked as good as any of the timber in the dock; and that this dry-rot could not have been discovered by an examination of it, without cutting or boring into it. The evidence on both sides tends to show that planks were nailed over these tenons or mortises, and that water would run in there, and be likely to cause dry-rot.

The defendants contend that the proof is indisputable that the portion of the dock that fell was built in 1882 or 1883, but upon this point we think there is a conflict of testimony; and, while the weight of it is certainly with the defendants, the trial court or this Court would not be authorized to base any legal assumption upon it. It is true, however, as claimed by defendants, that the defect or rottenness of the particular post and stringer which caused the injury could not have been ascertained by an ordinary inspection of the eye alone. The outside of the timbers presented no appearance of the decay or dry-rot within; but it is also true that, at the point where the post and stringer gave way from this rottenness, the timbers were concealed from view by the

plank nailed across and covering the mortise. This was a place where the rot would be apt to set in, and the question arises whether any adequate inspection could be made without taking off these planks. This was not done by the persons whose duty it was to inspect and repair the docks. But the evidence on the part of the defendants tended to show that they kept skilled and competent men, whose duty it was to examine these docks, and repair them; that the defendants were seldom present at the mill, and had no knowledge of any defect or rottenness in the timbers of the dock. The circuit judge charged the jury that the persons so employed to inspect and repair these docks were fellow-servants of the plaintiff, but refused to instruct them as requested by defendants' counsel in their ninth request:

" If you find from the evidence in the case that a short time before the accident occurred, and before the defendants commenced to use said docks for the wheeling and piling of lumber in the spring of 1888, they caused said docks, including the dock in question, to be examined and inspected by proper and competent persons, whose duty it was to carefully examine and inspect the said docks as to their condition of repair, and the soundness of the timbers and materials composing the same, and their condition as to safety, and being of sufficient strength for the purpose for which they were used, and to support the lumber and materials to be piled thereon, and the men and carts to be used thereon, in the ordinary and usual manner of using the same, and to put the same in a state of good repair, and in such a condition that the same should be safe, and of sufficient strength to support such lumber, materials, men, and carts; and if the defendants afterwards and continually kept in their employ a competent and proper person, whose duty it was to inspect and examine said docks, and to keep them in safe condition, and provided sufficient and suitable means and resources for that purpose, —then I charge you that the defendants had performed their duty, and were not guilty of negligence, and the plaintiff cannot recover, even if you should find that the

accident occurred through the negligence of the persons who were employed to make such inspection."

The nearest he came to it was in the following language, in speaking of the defendants' requests:

" No 11 is given: 'If you find that the defendants did not have actual knowledge of the decayed condition of the timber in the dock in question'—I have modified this in this way, slightly—' and could not have discovered it by exercising reasonable care and diligence, and that they employed proper and competent persons, whose duty it was reasonably to examine and inspect their docks, including the dock in question, and to put them and keep them in a safe condition, and that defendants provided suitable means for that purpose, the defendants in that case had performed their entire duty towards their employés, so far as the safety of the docks is concerned, and plaintiff cannot recover'—that is, in case they had no knowledge, and could not have knowledge in the exercise of reasonable care."

He also refused the fifteenth request of defendants, in this same connection:

" The defendants were not bound personally to examine and inspect the docks. They performed their entire duty in that regard if they selected with reasonable care, and employed, suitable and competent persons so to do."

It will be seen that the circuit judge was of the opinion, and so instructed the jury, that, if the defendants themselves could have discovered this trouble with the dock by exercising reasonable care and diligence, they were responsible, notwithstanding they had employed skillful and competent persons to look after these docks, and had furnished them with the proper materials for repair. In this I think he was right.

It is claimed by defendants' counsel that the proofs show that none of the defendants undertook to personally supervise the running of the mill or the manufacture of lumber at this point; that they were seldom there; and that, therefore, if they had employed competent and suit-

able men to look after these docks, and to see that they were kept in safe repair for the uses to which they were put, they had performed their duty in the premises in that regard, as they had always furnished sufficient and suitable materials for such repair. And the counsel rely upon *Hoar v. Merritt*, 62 Mich. 386 (29 N. W. Rep. 15); *Smith v. Potter*, 46 Id. 258 (9 N. W. Rep. 273); *Davis v. Railroad Co.*, 20 Id. 105; *Quincy Mining Co. v. Kitts*, 42 Id. 34 (3 N. W. Rep. 240); and other cases.

It is well settled by all the authorities that the master must provide his servant with a safe place to work in, and furnish him with suitable machinery and appliances with which to perform such work, and it is his duty to keep such machinery and appliances in good repair. If he cannot do this himself, personally, he must provide some other person to take his place in this respect; and the person to whom the master's duty is thus delegated—no matter what his rank or grade; no matter by what name he may be designated—cannot be a servant in the sense or under the rule applicable to injuries occasioned by fellow-servants. Such person is an agent, and the rules of law applicable to principal and agent must apply. He is generally called in the law a "vice-principal." In order to keep the machinery and appliances safely in repair, the law makes it the duty of the master to make all needed inspections and examinations; and he cannot escape responsibility by delegating this duty to one who, in other respects, may be a fellow-servant of the person injured by the failure to properly perform this duty. In the present case, if the duty to repair these docks, and keep them in a safe condition, was imposed upon Reasner, or any other employé of the defendants, such employé, as far as this part of his employment and duty was concerned, was not a fellow-servant with plaintiff, but was the agent or vice-principal of the defendants, and

standing in their shoes. See 7 Amer. & Eng. Cyclop. Law, under head of "Fellow-Servants," pp. 824–830, inclusive.[1]

This duty of the master has been recognized by our own decisions. *Parkhurst v. Johnson,* 50 Mich. 70 (15 N. W. Rep. 108); *Huizega v. Lumber Co.,* 51 Id. 272 (16 N. W. Rep. 643); *Swoboda v. Ward,* 40 Id. 420; *Smith v. Car Works,* 60 Id. 502 (27 N. W. Rep. 662), *Quincy Mining Co. v. Kitts,* 42 Id. 39, 40 (3 N. W. Rep. 240); *Marshall v. Furniture Co.,* 67 Id. 167 (34 N. W. Rep. 541); *Ryan v. Bagaley,* 50 Id. 179 (15 N. W. Rep. 72).

If the master can delegate this duty to an employé, and apply the doctrine of fellow-servant to such employé because he is working in and about the same business, and in the same general line of such business, as in this case, the manufacture and piling of lumber, then the employer is permitted to shirk his duty upon another, and then allowed to escape all responsibility and liability upon the plea that the person injured is the fellow-servant of his delegate or agent. The law, as I understand it, will not permit this. It is a duty the master owes, which he cannot delegate to a fellow-servant of his employés. If he picks out one of the men working about this mill, and imposes upon him the duty of seeing that the machinery is kept in safe repair, or delegates to one of the men working in the mill-yard the duty of seeing that these docks are kept safe and sound, these men, as far as these duties are concerned, stand in the place of their employer, and their negligence is his negligence. *Rodman v. Railroad Co.,* 55 Mich. 57 (20 N. W. Rep. 788); 59 Id. 395 (26 N. W. Rep. 651); *Slater v. Chapman,* 67 Id. 523 (35 N. W. Rep. 106); *Baldwin v. Railway Co.,* 75 Iowa, 297 (39 N. W. Rep. 507); *Capper v. Railway*

[1] See *Harrison v. Railroad Co.,* 79 Mich. —— (44 N. W. Rep. 1034).

*Co.,* 103 Ind. 305 (2 N. E. Rep. 749); *Railway Co. v. Herbert,* 116 U. S. 642 (6 Sup. Ct. Rep. 590); *Railroad Co. v. Jones,* 30 Kan. 601 (2 Pac. Rep. 657); *Ford v. Railroad Co.,* 110 Mass. 241; *Luke v. Mining Co.,* 71 Mich. 364 (39 N. W. Rep. 11).

The cases cited by the defendants' counsel, in this State, do not touch this question, except in the instances I shall note. In *Mining Co. v. Kitts, supra,* it is laid down as strongly as possible that the master is responsible for negligence in the general supervision of his business,—

" Whether the supervision be by the master in person, or by some manager, superintendent, or foreman to whom he delegates it. In other words, while the servant assumes the risk of the negligence of fellow-servants, he does not assume the risk of negligence in the master himself, *or in any one to whom the master may see fit to intrust his superintending authority.*"

What is afterwards said as to the position that Wagner occupied, holding him to be a fellow-servant of Kitts, the person injured in that case, upon which defendants' counsel rely as supporting their theory, was not necessary to the decision of the case, as the court found that there was no evidence that Wagner was negligent; and I cannot follow the *dictum* of the judge who wrote that opinion, if it is to have the construction here claimed for it. If it is to be regarded as the law of this State, then all that the master has to do, in order to relieve himself of the responsibility of negligence in the general supervision of his business, is to split or divide up this general supervision among his employés, having one look after and control one branch of the business, and another some other part of it, and thereby make each the fellow-servant of all the rest of the persons in his employ.

In *Smith v. Potter,* 46 Mich. 258, it was held that the brakeman injured was a fellow-servant of the car inspectors employed by the road to see that the cars transferred

from one road to another were in a proper condition. This appears to have been based on the fact that the statutes of this State make it the duty of any railroad to receive and forward cars of other roads impartially and diligently, and that the business required the employment of many servants beyond the possible constant supervision of either the employer, or of any representative held in law to personate him, and that the duties of the car inspectors were of no different nature from that of other persons employed by the road, such as conductors and brakemen. It is expressly stated in the opinion, at page 264, that the duty of these car inspectors was—

"Not a duty of management or general supervision, but a task for which nothing is required but fidelity, and mechanical knowledge of a comparatively limited kind."

This certainly is not the case at bar. The safety and soundness of these docks, upon which scores of men were working at every hour of the day, was certainly a matter of the greatest importance in the management and supervision of this business. To hold that negligence in this respect is not negligence in the supervision and management of the business is to hold that there can be no such negligence in any case, and to relieve the master of all liability or responsibility for the safety of his employés, if he is only sharp enough to divide up the supervision of his business among his employés, and keep away from the business himself, so that he can acquire no knowledge of the actual condition of things.

In *Gardner v. Railroad Co.*, 58 Mich. 584 (26 N. W. Rep. 301), the case was really decided by a majority of this Court upon the ground that the plaintiff was injured in going into a place and at work in violation of orders not to do so. This disposed of the case, and what is said by Mr. Justice SHERWOOD in that case as to fellow-

servants was not involved in the case as ruled; and, if it were, it is in the same line as the reasoning in *Smith v. Potter, supra,* and cannot apply to the case before us. There is nothing in this case on account of the magnitude of the business that prevented the defendants from personally inspecting these docks, or from delegating such duty to some person who must stand in their places.

The case of *Hoar v. Merritt,* 62 Mich. 386, is the strongest case in defendants' favor, but in that case the majority of the Court held that the painter who was injured had no business to go upon the scaffolding which fell, without ascertaining whether it would hold him, as it was not built for his use, and he was not invited to go upon it. This, again, was decisive of the case, without any finding as to fellow-servants. But that case is not the present one by any means. Merritt employed men to build his house, and furnished proper and suitable materials for so doing. This scaffold was not built or maintained by him. It was not a permanent structure, —a part of the daily business,—but a temporary thing, put up by the carpenters for their own use in building the cornice. "They were the persons most interested in building it safe and strong." The defendant Merritt had nothing to do with its construction in any way.

But here these docks were a part of the plant of the mill when it was purchased by the defendants. It was a place where they ordered men to go to work. They recognized, when they bought the property, that it was their duty to keep these docks in a safe condition, and Mr. Friant testifies that he made a personal inspection of them immediately after he bought them. The plaintiff had a right to suppose that these docks were safe when he went upon them, and I know of no rule of law anywhere that imposed upon him the risk that some fellow-servant, like Reasner, whose chief duty was to look after

the lumber piles, but who was also charged to "keep an eye out" on the docks, and to repair them when it was necessary, might be negligent in his duty as to such repairs. He had a right under the law, as it exists everywhere, in my opinion, to rest upon the duty of the master to furnish a safe place in which, or on which, to work, which duty could not be delegated to a fellow-servant.

There is also another aspect of the case which sustains the charge of the judge. There was a foreman or general superintendent of the business at this mill, Mr. Hadden, who certainly, under the testimony, stood in the place of the defendants. Mr. Friant testifies that Hadden's business there was to look after the sawing of the lumber, and in a general way the entire business. That he represented them when they were not there, in a "limited way." He employed the men, fixed their wages, and discharged them whenever he chose to, and had control of all the men there, except the book-keeper. He controlled Mr. Boyd, the "yard boss," but could not discharge him, as he was hired directly by the defendants. Hadden directed the work, and had a general discretion as to what should be done. It is evident that Hadden was a vice-principal at the mill. His knowledge was the knowledge of the defendants, and his opportunities of knowledge were their opportunities. His negligence was their negligence. Mr. Hadden was at the mill daily. It was his duty, as vice-principal, to see that these docks were in a safe condition, and not dangerous, and it was his duty to know their condition; and the court was justified in instructing the jury, in effect, as above quoted, that, if the defendants could have discovered this defect in the docks by exercising reasonable care and diligence, they were liable, as Hadden's failure to exercise such care and diligence would be the failure of defendants to do so.

It was claimed by plaintiff's counsel that Friant's own account of the inspection he personally made of the docks at the time he purchased, or soon after, was not a thorough, competent, and proper inspection; and I think, from his testimony, plaintiff was entitled to go to the jury upon this claim. He admits he did not make a "close inspection." They make the same claim as to the inspection made by all the persons, Boyd, Braddock, and Reasner. I think they were also entitled to go to the jury on these inspections. Something depends, of course, upon the age of this particular dock. The plaintiff's evidence tended to show that it was built in 1875, and defendants' that it was constructed anew in 1882 or 1883. But, from all the circumstances of the case, it was for the jury to determine whether the inspection, as made, was made at this particular spot, and whether, if made there, it was a sufficient inspection to look at it, or sound it with a hammer or other instrument, without tearing off this plank, which was nailed over the mortises and tenons, or without cutting or boring into the wood. If built in 1875, there would, of course, be a greater necessity of being particular, beyond the mere sight of the eye, than if it were built in 1882. But the whole question was one for the jury, and not for the court. There was, then, no error in submitting the facts to the jury for their determination.

It was not error for plaintiff to show what wages he commonly earned, but it was not proper to show that he had no other means of support than day-labor. It was immaterial to the issue, and an indirect way of bringing the poverty of plaintiff before the jury, which is not permissible in actions of this character; and we cannot say it may not have been prejudicial to defendants. See *Marsh v. Bristol*, 65 Mich. 383 (32 N. W. Rep. 645); also *Chicago v. O'Brennan*, 65 Ill. 160.

There was no error in permitting the plaintiff, on his redirect examination, to state the occasion of the discontinuance of his wages by the defendants, and what was said on such occasion by Mr. Hadden, the foreman of defendants. The matter of wages being paid him by the defendants after the injury, and the subsequent stoppage of such wages, was drawn out by defendants' counsel on cross-examination, and the testimony objected to was proper in explanation thereof. Hadden was the agent of defendants in the fixing of wages for the men, and he was authorized to discharge any of the employés. Therefore he was in the direct line of his agency, as far as this conversation was concerned, and it related to a present transaction in which he was then engaged as such agent, and was not a narrative of some past transaction or occurrence.

Adam Oakes, the father of Henry Oakes, against objection, testified that the next day after the accident Mr. Hadden came to his house, and said:

"'Adam, it looks like a real hospital in your house.' I said: 'Yes; it is too bad.' 'Well,' he said, 'I have been to Leroy, and seen the doctor, and I told him to fetch the boys out all right.' I says: 'It is pretty bad for me. I sent the boy for to earn something, and the boy runs there, and he got hurt.' He said: 'We have been fixing these docks right along, but we hadn't got to this place yet.' He said it was all right; he would see me again; and he went home, and I never saw him."

This testimony tended to show, if admissible, that Hadden had knowledge of the defective condition of these docks, and was repairing them, but had not, in such repairs, yet reached the place of the accident. If Hadden had made this statement at the time of the accident, or immediately following it, it might have been admissible as a part of the *res gestæ*, but it was made the day after, and away from the mill, and was a statement of a past

transaction.   If at this time, at Oakes' house, Hadden had distinctly stated that he had knowledge, before this accident, of the particular defect in the timbers of this dock which caused its fall, such statement would not have been admissible, under frequent decisions of this Court. *Mabley v. Kittleberger,* 37 Mich. 360; *Patterson v. Railway Co.,* 54 Id. 82 (19 N. W. Rep. 761); *Stebbins v. Keene Tp.,* 55 Id. 552 (22 N. W. Rep. 37); *Gates v. Boom Co.,* 70 Id. 309, 318 (38 N. W. Rep. 245, 249); *Mich. Cent. Railroad Co. v. Coleman,* 28 Id. 440; *Ruggles v. Fay,* 31 Id. 141; *Wormsdorf v. Railway Co.,* 75 Id. 476 (42 N. W. Rep. 1000).

There was no error in admitting testimony as to the condition of the dock before the accident, including the weaving or trembling testified to by Lothrop.

The last witness sworn on rebuttal by the plaintiff, Sylvester Clark, testified that one or two days before the accident he notified Mr. Braddock that dock No. 6 was unsafe.   Braddock replied: "You boys are more scared than hurt about that dock." · And that about five minutes before the accident he again told Braddock that it was not safe, and that Braddock made substantially the same reply.   This testimony was offered in impeachment of Braddock, who had testified that they had no knowledge of any defect in the dock, and whose attention was called to this conversation with Clark.   The court refused to charge the jury, as requested by defendants, that if the jury found that this notice was given to Braddock, yet that it would not be notice to defendants, or bind them in any manner.   The admission of the evidence, and the refusal to charge as requested, are assigned as error, on the ground that Braddock was a fellow-servant of plaintiff, and therefore a notice to him would not be notice to defendants.   The court instructed the jury that Braddock, who was the foreman of the mill-yard, was a

fellow-servant of the plaintiff. But Mr. Braddock himself testified that his business there was to see that the docks were in repair, or to put them in repair, as well as to superintend the yard; that Mr. Reasner, whose especial duty it was to repair these docks, was under his immediate supervision; and this is not disputed by defendants, but conceded. In such cases, as already. stated, in my opinion, Mr. Braddock, as far as the supervision of these docks was concerned, was the agent of defendants, and could not be in this respect a fellow-servant of the plaintiff, although he may have been such fellow-servant in other respects, as to which it is not necessary here to determine.

The court was mistaken in holding that any man whose duty it was to see that these docks were kept in reasonably safe repair was a fellow-servant of plaintiff in such a sense that the negligence of such person would not be the negligence of defendants. Therefore notice to Braddock, who had the supervision and control of this matter, was notice to the defendants.

It is also claimed that the charge of the court is open to the objection that it made the safety of the premises the test of the performance of the defendants' duty, without any qualification whatever; and that if the jury found that the dock was, as a matter of fact, unsafe, the defendants were liable, no matter what was their care and diligence. I'do not so read the charge. The jury were instructed that if the defendants did all that a prudent man would have done to keep the dock reasonably safe and secure, and were without fault in this regard, the verdict must be in their favor; and I find nothing in the charge, at any place in the record, militating against or qualifying this instruction, The jury were also told, in the language of the defendants' request:

"7. The defendants were not insurers of the safety of the persons whom they employed to work upon their docks; and, if the accident occurred without actual fault on their part, the plaintiff cannot recover.

"8. Defendants cannot be charged with negligence in not discovering a defect in the dock which could not be ascertained by ordinary care or inspection.

"10. If you find that the dock in question was defective by reason of decay of the east stringer, or by reason of decay of any of the timbers thereof, and that such decayed condition of the timber was not apparent, and not to be discovered by the ordinary methods of inspection, and the defendants did not have actual knowledge or notice thereof, then, in that case, defendants cannot be charged with negligence, and plaintiff cannot recover."

It is also objected that the tenor of the charge of the court was to instruct the jury that it was the duty of defendants to exercise reasonable care and skill in maintaining the dock at the point of the accident to the standard of reasonable safety; and, if need be, for that purpose it was their duty to frequently inspect, examine, and test its strength sufficiently; and in effect instructed them that such examination or testing must be done by them personally, or that, if they delegated this work to others, they would be liable for the negligence of such persons. Under the views already expressed, there was no error in this; and I have been unable to find any error in the charge of the court prejudicial to defendants. In my view of the law of the case in relation to the doctrine of fellow-servants, the charge of the court was too favorable to the defendants.

For the errors noted the judgment must be reversed and a new trial granted, with costs to defendants.

LONG, J., concurred with MORSE, J.

SHERWOOD, C. J.    I concur in the result.

CHAMPLIN, J.    I do not think the duty of inspection, when such inspection is required by the circumstances of

the case, can be delegated by the master in such manner as to avoid responsibility, and I concur in reversing the judgment.

CAMPBELL, J.    I agree in reversing the judgment, but I do not think it proper to throw doubt on our previous decisions which have dealt with the questions in this cause.

I have not discovered anything indicating negligence in the defendants in this case; and I think that business cannot be conducted on a large scale on the doctrines which my Brother MORSE has expressed as his personal views.