BUCK *v.* WESTERN CONCRETE BRIDGE CO.

MASTER AND SERVANT—FELLOW-SERVANTS — SCAFFOLDS—DUTY TO
SELECT SUITABLE MATERIAL—NEGLIGENCE.

Where defendant's superintendent and manager in charge
of bridge construction ordered one of the workmen to
change a scaffold that was used in the work by nailing
one end of a supporting plank to an old horizontal timber
which was defective and insufficient to support the scaf-
fold, as an inspection would have disclosed, and the
workman, in performing the work, concluded it would
not be secure and so advised the superintendent, who
ordered him to proceed, saying that it was safe, the act
of the superintendent was that of the employer in negli-
gently selecting unsuitable material, and plaintiff's right
to recover was not barred by the fellow-servant rule.
OSTRANDER, J., dissenting.

Error to Ingham; Wiest, J. Submitted April 11,
1912. (Docket No. 65.) Decided December 20, 1913.

Case by John Buck against the Western Concrete
Bridge Company for personal injuries. Judgment for
defendant on a verdict directed by the court. Plain-
tiff brings error. Reversed.

*Frank L. Dodge,* for appellant.

*Kleinhans & Knappen (Cummins & Nichols,* of
counsel), for appellee.

McALVAY, J. Plaintiff brought this suit against
defendant, an Illinois corporation, for the purpose of
recovering damages for personal injuries received by
him, charged to have been caused by the negligence
of defendant, in whose employ plaintiff was engaged
as a common laborer at the time of his injury. There
is very little dispute upon the facts in the case, but,

as a verdict was directed against plaintiff, we will state as established the case presented by him, which tended to prove the following facts:

Defendant, under contract with the city of Lansing, was at the time of plaintiff's injury engaged in constructing two bridges within said city. In charge of this work, as representing defendant, was G. M. Chandler, manager, who superintended the construction of both bridges. He hired and discharged all of the workmen and was the only representative of defendant continually present during the construction. He opened an account in a local bank in defendant's name, in which he made deposits, and from which he drew moneys to pay all expenses for labor, etc., upon defendant's checks signed by him. Mr. Chandler was authorized by defendant to secure these contracts and was represented by the president of the defendant corporation, who executed the contract for the defendant corporation, as its manager, by signing Mr. Chandler's name, as such manager, upon the blank, required by the city. Mr. Chandler also executed a modification of such contract, signing the name of defendant, by George M. Chandler, manager. His duties, so far as this record shows, were those of superintendence only. He in no instance performed any work with the men. Mr. Chandler testified that he had general charge of the work of construction of these bridges under written orders of the president of the defendant corporation. There were several men employed on these bridges by Mr. Chandler, including Mr. Dora, foreman. He also testified that he was a civil engineer by education and profession, employed by defendant.

The accident to plaintiff occurred during the construction of the bridge over Sycamore river, on Mt. Hope avenue. This bridge was replacing an old wooden bridge which had been partially taken down during this construction, leaving some piles standing,

with a 12x12 inch timber or bridge cap on top of them which extended out from the bank about 12 feet on the north side of the bridge at the east end. On the day of the injury to plaintiff, excavation had already been made along the bank of this stream to receive the concrete of which the abutments were to be constructed, and the concrete had been filled in at the south end. For the purpose of providing means for getting the concrete from the bank, where it was mixed, and dumping it into the excavation, it was necessary to build from the bank a scaffold upon which it was to be wheeled by the workmen. The scaffold was being erected on the day in question and was completed except the north end. The workman in charge, named Lettimore, discovered that the scaffold at the north end was being built too far away from the bridge to dump the concrete into the trench, and the pieces of timber put up to support the north end of the scaffold were taken down in order to move them nearer the bridge. While this was being done, Mr. Chandler, who was present, standing on this old bridge timber, ordered Lettimore to nail the top crosspiece, which was to support that end of the scaffold planks, to the end of the 12x12 inch bridge cap timber, above described. This workman examined the old timber and told Mr. Chandler that he did not think it safe. Mr. Chandler again ordered him to nail it on there, saying that it was safe. He obeyed Mr. Chandler's instructions, and with the assistance of another workman nailed the end of the plank which was to support the scaffold to the end of the 12x12 inch timber with several 60d. spikes, and then went to the shed for an iron spike 8 or 10 inches long, which he also drove through the plank into the end of this 12x12 inch to make it doubly secure. He says he changed his construction because of Mr. Chandler's orders. The scaffold planks were then put on and plaintiff was ordered to wheel cement onto the scaf-

fold and dump it into the trench. He started with the first load, which is estimated to have weighed 500 pounds, and wheeled it to the north end, when the scaffold gave way where it was nailed to this old timber and let him down, with his wheelbarrow and load to the ground below, a distance of about 15 feet, causing him severe injuries. Plaintiff was not present and took no part in constructing this scaffold. At the argument exhibits were used consisting of photographs and the piece of 12x12 inch timber which was selected by Mr. Chandler. This appeared to be absolutely unfit for the purpose of supporting a scaffold, as was easily discoverable upon the slightest examination.

Both sides introduced testimony in the case, and at its close defendant moved the court to direct a verdict in its behalf "for the reason that the injury, if any, resulting to the plaintiff was because of the fault or negligence of a fellow-servant." The court accepted this view of the case and granted this motion. The case is before this court on writ of error. The assignments of error involve but one principal question, and that is whether the man Chandler was the vice principal of defendant and acting in that capacity at the time he ordered the scaffold to be nailed to the timber in question. The learned circuit judge held that Chandler was the vice principal of defendant in its employ in and about the construction of these bridges, but that in this matter he was performing a delegable duty, and his negligence in such case was the negligence of a fellow-servant, and therefore plaintiff could not recover.

Under the ruling of the court in deciding the motion for a directed verdict, it will not be necessary to discuss at any length the question as to whether Mr. Chandler was a vice principal. Defendant in the instant case concedes that Mr. Chandler's relations to it and to plaintiff were such that for some purposes

he might in law be regarded as a vice principal, but that in the performance of the particular act he was acting in the capacity of a fellow-servant. This was the exact contention in the case of *Shumway* v. *Manufacturing Co.*, 98 Mich. 411, 414 (57 N. W. 251, 252). Mr. Justice MONTGOMERY, speaking for the court, said:

" * * * And the contention is that the question of whether the act was that of the master or a fellow-servant depends for its solution rather upon the nature of the act, than upon the general scope or extent of the superior servant's authority. The contention, precisely as made, is undoubtedly supported by eminent authority, but we are constrained to hold that the previous holdings of this Court have not so limited the liability of the master. See *Slater* v. *Chapman,* 67 Mich. 523 [35 N. W. 106, 11 Am. St. Rep. 593]. * * * The decisions of this Court have extended the rule so that it may be said that when the master delegates to a superintendent full power to manage a business, and employ and discharge servants, without interference, such superior servant, in whatever he does in furtherance of the business and operations he has in charge, stands in place of the master, and the negligence of such superior servant is the negligence of the master."

Counsel for defendant contend that the instant case is controlled by the decision of this court in *Schroder* v. *Railroad Co.*, 103 Mich. 213 (61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354), and similar cases which followed that decision. In our opinion this case is distinguishable from these cases.

Mr. Chandler, as vice principal, gave this order to change the manner of the construction of the scaffold, and his act in so doing was the act of the defendant corporation. The question to be determined here is not whether this was a delegable duty but whether the order of Mr. Chandler was the act of the defendant. *Shumway* v. *Manufacturing Co., supra.* If it may be

said that this duty had been delegated, the order of the vice principal revoked such delegation.

It is contended on the part of defendant that no question of proper material not having been furnished is in this case. It is difficult to see how the selection by the vice principal of the bridge cap timber was not a selection and furnishing of material for use in the construction of this scaffold. It was used for the exact purpose for which a workman had a piece of timber at hand ready to use, and by this order that piece was discarded and this timber selected, and, as far as the facts show, it was clearly not fit for the use for which it was intended.

In another respect this case also differs from the cases relied upon by defendant, and that is that Mr. Chandler at no time assisted in the work of construction on these bridges. He was a superintendent and performed only duties belonging to such position. He was more than that; he was held out by the defendant company as it manager.

Other matters discussed do not require determination. The facts presented by plaintiff entitled him to have his case passed upon by a jury. The trial court was in error in directing a verdict for defendant. The judgment of the circuit court is reversed, and a new trial ordered.

STEERE, C. J., and MOORE, BROOKE, KUHN, and STONE, JJ., concurred with MCALVAY, J.

BIRD, J. *(concurring)*. I agree with Mr. Justice MCALVAY that the case should be reversed, but I think the reversal should be placed upon the ground that Superintendent Chandler furnished or used defective and unsuitable material in the erection of the scaffold. As to this act, to wit, of furnishing materials to make a reasonably safe place for plaintiff, he was acting for the master with respect to a nondelegable duty. *Van*

*Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572). In the work of constructing the scaffold, had proper and suitable materials been furnished, his act was that of a fellow-servant. *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196 (61 N. W. 658, 27 L. R. A. 266). The defendant made no showing that other and more suitable materials were furnished which might have been used for the support of the stringer in place of the decayed 12x12. In the absence of such showing on the part of the defendant, the presumption is that the materials used were the materials furnished, and the failure in this regard was the failure of the master.

OSTRANDER, J. *(dissenting).* In my opinion the testimony does not show that defendant had delegated to Mr. Chandler full power to manage its business, even in the particular locality, and therefore the case does not fall within the rule of *Shumway* v. *Manufacturing Co.*, 98 Mich. 411 (57 N. W. 251). I cannot distinguish this case and *Corey* v. *Iron Co.*, 151 Mich. 558 (115 N. W. 737). Justices HOOKER and MONTGOMERY, who took part in the earlier decision, also approved the later one; Justice HOOKER writing the opinion. See, also, *Peters* v. *Railroad Co.*, 165 Mich. 217 (130 N. W. 602).

The judgment should be affirmed.