GEORGE MARSHALL, ADMINISTRATOR, ETC., V. THE WIDDI-
COMB FURNITURE COMPANY.

*Master and servant—Duty to employé—Dangerous machinery—Neg-*
*ligence—Province of jury.*

1. The law does not hold persons using machinery to any *absolute*
duty of insuring its safety, but does require some care in intro-
ducing *untried novelties.* That which has been approved as safe
by reasonable experience may be presumed safe by those who
rely on that experience to justify them in selecting it. But where
the result of any defect must be an immediate danger to human
life, it devolves on those who expose it to the danger of a new
experiment, which turns out badly, to show that they have fol-
lowed such a course as the understood rules of science or
mechanics applicable to such matters rendered safe according
to ordinary probabilities.

2. There was at least enough in this case to go to the jury on the
question whether the new shaper-head was a reasonably safe
implement and properly designed, and whether the principle
involved in it was not a departure from safe methods as before
applied ; and the fact that there may have been some conflict on
one or another qu stion would not allow the trial judge to deprive
the jury of the power to determine the conflict.

Error to superior court of Grand Rapids. (Parrish, J.)
Argued May 4, 1887. Decided October 13, 1887.

Case. Plaintiff brings error. Reversed. The facts are
stated in the opinions.

*Everett D. Comstock* and *Benjamin F. Sliter,* for appellant.

*Butterfield & Keeney (Edwin F. Uhl,* of counsel), for
defendant.

CAMPBELL, C. J. Peter Marshall was killed by a knife
flying out of a rapidly revolving shaper-head, the first time it
was used as then arranged, and as soon as it reached its high

velocity, before it was applied to cutting into lumber to be worked. The testimony was strong that the knives had been fastened in as tightly as they could be. The head was got up on a new plan by the contrivance and invention of one of the principal managers of defendant, and was made accurately from the plan. The court below, without giving reasons for that conclusion, held there was no proof of negligence, and ordered a verdict for defendant. This ruling would have made all other points immaterial. There were several rulings excluding evidence which seems to have had some legal bearing on the points in controversy. The only conceivable grounds for taking the case away from the jury must have been that the defendant had, in choosing to have the shaper-head made as it was, been legally justified in taking that responsibility, having a right to rely on the skill of those who acted in making or selecting it.

The testimony tended to show that the construction was novel in some respects. There was testimony tending to show that one of the differences between the shaper-head in question and others used before it was that in this the projecting knives, which were set in the solid body of the head, were set in parallel grooves, and were made with parallel surfaces, so that they were only held in place by the pressure of metal on metal, without shoulders, wedges, or any other device to hold them beyond friction; while in others there were such devices, by making the shank of the knife wedge-shaped, and thicker at the inner end than at the outer, or by some other device whereby the knife would be checked in its tendency to fly out of its socket.

The fact that a knife did fly out when fastened in as well as it was designed to be, and when the testimony indicated no imperfection in carrying out the design, had at least a tendency to prove that the design was bad. Never having been used again, there was nothing to indicate that it would have been any safer, or to overcome the proof that it had been

made as safe as its nature permitted. There was at least enough to go to the jury on the question whether it was a reasonably safe implement and properly designed, and whether the principle involved in it was not a departure from safe methods as before applied. If there was such testimony, the fact that there may have been some conflict on one or another question would not allow the judge to deprive the jury of the power to determine the conflict.

The law does not hold persons using machinery to any absolute duty of insuring its safety. It does, however, require some care in introducing untried novelties. That which has been approved as safe by reasonable experience may be presumed safe by those who rely on that experience to justify them in selecting it. But where the result of any defect must be·an immediate danger to human life, it devolves on those who expose human life to the dangers of a new experiment, which turns out badly, to show that they have followed such a course as the understood rules of science or mechanics applicable to such matters rendered safe according to ordinary probabilities. This machine was, according to some, at least, of the testimony, made in violation of known rules of mechanics, in trusting to mere pressure to overcome the centrifugal tendencies of a knife revolving at great velocity. It was devised by defendant on its own responsibility. Whatever view the jury might have taken of the matter, the questions presented were distinct questions of fact, and ought to have been submitted.

It certainly cannot be said as matter of law that the deceased contributed to the casualty by his negligence. He was not a trespasser, and the knife was just as likely to be thrown in one direction as another. No one could have supposed that where he stood was particularly dangerous.

As the argument naturally rested chiefly on the withdrawal of the case from the jury, the questions concerning the rejection of testimony were not as fully presented as they other-

wise would have been.  There is reason to urge that testimony
was shut out concerning mechanical questions, and some
others which might have thrown light on scientific subjects.
It is not very clear that average jurors, or average persons
not jurors, do not need some instruction on mechanical rules
and scientific facts, which require some intimacy with practi-
cal affairs.   Theoretical knowledge is not always practical
knowledge, and many intelligent persons are deficient in the
power of readily comprehending such matters.   In the present
case there was more or less conflict on some of the questions
which the court seemed to regard as within the common
knowledge of mankind.

The judgment should be reversed, and a new trial
granted.

MORSE and CHAMPLIN, JJ., concurred.

SHERWOOD, J. (*dissenting*).   On the first day of April,
1885, the defendant, a corporation organized under the laws
of this State, and located at Grand Rapids, was engaged in
the manufacture of furniture and doing an extensive business,
and had in its employ about 400 men.   Among the persons
employed was a boy 14 years old, by the name of Peter Mar-
shall.   He had at that time been employed by the defendant
about six months, and worked in its factory, where a large
amount of machinery was used.

Among the machines used by the defendant in its busi-
ness was one known as a shaper-head, which was used in rais-
ing moldings or panels, cutting grooves, rounding edges, and
doing other work such as could be done with the machine in
the defendant's business.

The shaper-head was formed by placing on a perpendicular
spindle, extending up through the table, two circular iron
collars seven inches in diameter, one above the other, the
surfaces towards each other being perfectly smooth, and in
them were two grooves cut, in which were placed the differ-

ent kinds of knives used in the various kinds of work to be done upon the machine. A thread was cut upon the spindle above the collars, which was furnished with a nut, which when turned down furnished the pressure upon the collars necessary to keep the knives in place, or rather was the force relied upon for that purpose, and to keep the knives from flying out of the grooves.

When the shaper was operated, the head made 4,500 revolutions in a minute, and could only be used by experienced workmen.

In the month of March, John Widdicomb, the secretary of the company, ordered a new style of shaper-head. When this was made, a young man, 18 years old, by the name of Tell, beveled and fitted the knives, and fastened them in the head ready for use. On the morning of the first day of April, Tell and one Hewey, who was the defendant's foreman on that floor, together examined the shaper-head, and found it ready for use, with the knives, as they claimed, properly fastened, using both wrenches to make them fast. With the knives thus fastened, the testimony shows, and it is uncontradicted, the foreman, Mr. Hewey, an experienced machinist, Sies, the man who made the machine, and Tell, the machinist who had tightened the knives, went to the table to put the head upon the spindle, but, before doing so, Hewey and Sies tried it again to see if the knives were tight, and after finding it all right, as they supposed, put it on, and started the machine carefully. In a moment or two after the shaper-head commenced moving, one of the knives flew out and across the room, struck the boy Peter Marshall, and, passing through him, killed him almost instantly.

The plaintiff, as administrator of his son, brings this suit for the killing of his boy, under sections 8313 and 8314, How. Stat., and whose death he alleges was caused by the negligence of the defendant.

The declaration contains four counts.

In the first it is alleged as the duty of the defendant to its employés to see that the machines used are manufactured by men of experience, and after approved methods, or, if of peculiar methods of construction, that they should not be put in operation among employés, as in this case, without notice to them, until tried and approved by experienced men; and it further alleges that, because of the violation of such duty, the boy received his fatal injury; that there was not a proper examination of the shaper-head made by a competent person to ascertain whether the knives were sufficiently fastened.

The second count charges the defendant's negligence to have consisted in starting in its factory, without notice to the plaintiff's intestate, one of the employés, a dangerous machine, defectively made and constructed, and experimenting therein with the same, and that, because of such defectiveness in the construction of the machine, on being started one of its knives was expelled, whereby young Marshall was killed.

The third count charges negligence upon the defendant in employing the said Tell to set and adjust the knives in the head. It alleges his unfitness and inexperience for that business, and because of his incompetency and want of skill he so negligently and improperly fastened the knives in the shaper-head that one of them flew out and killed the plaintiff's intestate.

The fourth count is more general, and charges the defendant with a breach of duty in not furnishing in its factory for the use of its servants and workmen reasonably safe machines, the dangerous parts of which were constructed in a reasonably careful manner, and in consequence of which the plaintiff's intestate lost his life.

Each count contains an allegation that the decedent exercised due care.

Defendant pleaded the general issue. The cause was tried

in the superior court of the city of Grand Rapids, before a jury, and at the conclusion of the testimony, which is all contained in the record, the court directed a verdict for the defendant, and plaintiff brings error.

The circuit judge held that there was no testimony reasonably showing any negligence on the part of the defendant. If this ruling of the court was correct, it disposes of the case, and no other errors assigned need be considered. After a careful inspection of the record I think the conclusion of Judge Parrish was correct, and the case of the plaintiff is not maintained.

The position of young Marshall at the time he was killed was that of a helper in the factory. His place was two or three feet east of a rip-saw run by one Van Stee, and was distant about three feet from the table where the unfortunate shaper-head was used. His general duty was to take the pieces as they came from the rip-saw, and lay them on cars which were used in the room, and, if a car was not at hand, to lay the pieces on the floor. It is claimed by the defendant, and the testimony tends to show, that his duty the morning of the accident was to remove some fronts that were being geared at Van Stee's table to another table standing near, but when he was struck by the knife he had left his place, and gone over to the west side of the room, more than 12 feet from the rip-saw. And it is claimed by the defendant that at the time the boy was struck by the shaper-knife he was not at his place of business and duty, but without leave of or direction by the foreman, or by permission of any other person whom it was his duty to obey, he took the liberty to go to another part of the room, where he was neither needed nor wanted; and that, had he remained in his proper place, he would have avoided the fatal knife.

I do not, however, deem it necessary in properly disposing of this case, or the ques ions present'd, to consider anything claimed as negligence on the part of the plaintiff. Was

there any testimony given or improperly rejected fairly tending to show any negligence on the part of the defendant, is the important question in the case. . If so, the judgment should be reversed; if not, then it should stand.

It seems to be conceded that the shaper-head is a very dangerous piece of machinery when in motion, and that it is not an unusual thing for it to expel a knife when properly used.

The change that was made in the machine in use most, made by the defendant, was intended to make it more safe. It appears, so far as the testimony shows, to have been carefully made by skilled machinists. It was put together by them, placed upon the spindle, and its operation tested by them for more than three-quarters of an hour before it was given over to the defendant for use, and with results entirely satisfactory to all parties interested.

The machine itself was not complicated. It involved no principle in mechanics not easily understood and discernible by any one at all accustomed to the use of machinery. The test of the machine could as well be made in an hour as longer; and when it had received the approval of old and skillful mechanics and machinists, the defendant was fully warranted in putting it to use in its factory. The principle involved in the change made in the old shaper-head, which had been for a long time in use in all the factories, was nothing new, and that it was well calculated to serve the purpose intended was not disputed in the testimony; and the witnesses for the plaintiff only differed with those of the defendant in the manner of its application, and, in making the application, the defendant, without any question, procured the best and most competent mechanics and machinists,—at least their competency and ability is not questioned.

The duty which the defendant owed to young Marshall was that of a master towards a servant in his employment. That duty was to take ordinary and reasonable care not to

subject him to unreasona'le and extraordinary dangers. The defendant, however, when it took the boy in its employ, did not guarantee his safety. Safety in the use of machinery is only comparatively so, both to those using it and to those at work in its immediate vicinity. All machinery is dangerous when in use, to a greater or less extent; and when it is said that the master may become liable for negligence in not providing suitable and safe machinery, it is not meant that the master warrants the strength or safety of his machinery or appliances, "but that he is personally negligent in not taking proper precautions to see that they are reasonably strong and safe. The law does not require him to guarantee the prudence, skill, or fidelity of those from whom he obtains his tools or machinery, or the strength or fitness of the materials they make use of. If he employs such reasonable care and prudence in selecting or ordering what he requires in his business as every prudent man is expected to employ in providing himself with the conveniences of his occupation, this is all that can be required of him," and he is only responsible where he has failed to use such care in securing the making of such machinery by competent and skillful persons, or in the selection thereof. Cooley, Torts, 557; *Railroad Co. v. Gildersleeve*, 33 Mich. 133; *Readhead v. Railway Co.*, L. R. 2 Q. B. 412; *Ladd v. Railroad Co.*, 119 Mass. 412; *Railroad Co. v. Love*, 10 Ind. 554; *Railway Co. v. Fredericks*, 71 Ill. 294; *Railroad Co. v. Thomas*, 42 Ala. 6:2; *Patterson v. Railroad Co.*, 76 Penn. St. 389; *Gibson v. Railroad Co.*, 46 Mo. 163; *Flike v. Railroad Co.*, 53 N. Y. 549; *Shanny v. Androscoggin Mills*, 66 Me. 420.

The testimony shows that in the room where young Marshall was killed, and where he had engaged with the company to do his work, there were 50 different machines propelled by steam. They were all used in the manufacture of furniture. It further appears that the deceased was 15 years old when he was killed, and, so far as the record shows anything

upon the subject, he was a bright and intelligent boy. He had been engaged in a manufacturing establishment, and some time in a drug-store, before coming to the defendant. It cannot successfully be contended upon this record but that he fully comprehended his situation and position in that room, surrounded by this dangerous machinery, and by his contract of service he assumed the ordinary risks and perils of the business. The length of time he had been employed must necessarily familiarize him with the hazards of the situation. Included in his contract for service is that, also, of assuming the risks arising from the negligence of fellow-servants. It is not claimed in this case that young Marshall, by direction of any of defendant's foremen, occupied a place outside of the business for which he was employed, but the testimony shows that the very place he occupied was one of his own choice; so that in this case we must find some evidence tending to show the defendant negligent in procuring the machine it did, or in securing the persons it did to make and run it, or the plaintiff must fail. I find no error committed by the court in admitting or rejecting testimony properly excepted to, which could prejudice the plaintiff.

The defendant had the right to make such changes in its machinery as it desired.

"Every manufacturer has a right to choose the machinery to be used in his business, and to control that business in the manner most agreeable to himself, provided he does not thereby violate the law of the land. He may select his appliances, and run his mill with old or new machinery."

In this case the defendant made a slight change in the shaper-head with the sole view of making the machine more safe, and preventing the knives from escaping. The competency and skill of the machinist employed to make the change is not doubted. The change was not made just exactly as others in the testimony say they would have made it; but that is of no consequence or tendency, since it was the privi-

lege of the defendant to choose among all the competent men whom it would have make it, and in no event was it required in this case to use the best machine, nor to use the safest; "nor is it responsible for a failure to discard one which is not such, and to supply its place with something safer." *Railroad Co. v. Gildersleeve*, 33 Mich. 133; *Stack v. Patterson*, 6 Phila. 225; *Railroad Co. v. Bishop*, 50 Ga. 465; *Wonder v. Railroad Co.*, 32 Md. 411; *Jones v. Granite Mills*, 126 Mass. 84; *Piper v. Railroad Co.*, 1 N. Y. (Sup. Ct.) 290; *Salters v. Canal Co.*, 3 Hun, 338; 2 Thomp. Neg. 983.

Not only was the changed shaper-head made by a skilled workman of experience, but, after it was made, it was actually put in operation, and worked to the entire satisfaction of the foreman of that floor, and others who witnessed it. These facts appear from the undisputed testimony. I am at a loss to discover so far any negligence, or testimony tending to show it, on the part of the defendant in furnishing this machine.

The question remaining to be noticed is the claimed incompetency of witness Tell to adjust the knives, and make them tight in the shaper-head, on the morning when the accident occurred. His youthfulness is principally relied upon to show incompetency. He was at that time 18 years of age, and had worked in the defendant's shops then about nine years, and was working on the same floor with the deceased when he was killed. He had two years and a half previous experience in making knives and taking care of machinery. He did not make the knives one of which killed the young man. He set the knives and screwed up the fastenings, and says the knives fitted right and were fastened in tight. But it was claimed his age and inexperience should have been submitted to the jury as tending to show his incompetency. It is, however, nowhere shown that what he did was not right.

His testimony is of little or no importance in the case, inasmuch as the shaper-head was all gone over and carefully

examined, and the knives tightened, after Tell left it, and before it was put on the spindle, by Mr. Hewey, the foreman, in the presence of Mr. Sies, who made the machine, and Mr. Spolstra, who was running a shaper-head. The skill and competency of these men were not assailed or questioned.

There is no testimony in the case tending to show that any of the men the defendant employed to make or run this machine were incompetent or unskillful. The foreman and Mr. Tandler say that even Mr. Tell was both competent and faithful in all he did. In addition to what is above stated, the record shows that four or five skillful machinists, each with an experience ranging from 5 to 30 years, say that the shaper-head with the change made in it was right in principle, and that the same was a safe machine.

A careful review of the entire record in this case since the argument has satisfied me that the defendant's machine was a safe one of that class; that it was made and operated by competent and skillful persons in the defendant's employ, and that there is no testimony tending to show to the contrary; that young Marshall lost his life without any fault or negligence on the part of the defendant; that the accident which overtook him, and resulted fatally, must be regarded as being included among the hazards assumed when he entered the employment of the defendant, and for which no recompense can be legally enforced.

The judgment of the superior court of Grand Rapids should be affirmed.