HELENA A. FISHER, ADMINISTRATRIX, ETC., v. THE CHICAGO & GRAND TRUNK RAILWAY CO.

*Negligence—Master and servant—Risks assumed by servant.*

In this case the direction of a verdict for the defendant on the ground that it appeared from the evidence that, whatever risks there were in regard to the employment, they were not concealed, but were open and visible, and known to the deceased, who must be deemed to have accepted and continued in the employment with reference to the same, is held fully justified. *Swoboda v. Ward*, 40 Mich. 423; *Balle v. Leather Co.*, 73 Id. 158; *Kean v. Rolling Mills*, 66 Id. 277; *Melzer v. Car Co.*, 76 Id. 94.

Error to St. Clair. (Canfield, J.) Argued October 17, 1889. Decided November 8, 1889.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*James L. Coé*, for appellant.

*E. W. Meddaugh*, for defendant.

CHAMPLIN, J. In the summer of 1885 the Chicago & Grand Trunk Railway Company was engaged in building a slip in the waters of the St. Clair river, in the city of Port Huron. This slip was constructed by driving piles in the usual manner; securing them with ties and bolts, and sheeting up the outer side. In prosecuting the work, two pile-drivers were used, and a small scow constructed for the purpose of transporting piles, and for the workmen to stand upon in securing and sheeting up the slip. In the center of this scow was a small derrick, used to assist the workmen in handling the piles. There were

also two small boats used in connection with the work, —one a yawl-boat, and the other a bunty, about 16 or 18 feet in length, 4 feet in width, flat-bottomed, and propelled by sculling from either end. The scow above mentioned was moved from place to place with pike poles in the hands of the workmen.

On the morning of August 4, 1885, one of the pile-drivers was anchored at a point where the workmen were engaged in driving piles, and it lay at right angles to the row of piles, and across the current of the river. There were at this time four men upon the scow, who had been a short distance below, and laden the scow with some square timbers, to be used upon the row of piles above the pile-driver. A short time before 12 o'clock the men were engaged in taking the scow around the rear end of the pile-driver. In doing so, they passed along the lower side of the pile-driver, until the scow projected about half its distance past the rear end, when a line from the pile-driver was made fast to a timber in the forward part of the scow, and two of the men pulled in upon the line, and the third took in the slack; and Fisher, being upon the scow, went back with a pike pole, to push off. The efforts of the men pulling upon the line caused the forward part of the scow to swing towards the rear of the pile-driver; and, as the corner of the driver operated as a fulcrum, the rear end of the scow swung off at the same time. William Powers, who was upon the pile-driver, was the only eye-witness who testified as to the manner in which the accident occurred. His testimony was as follows:

" *Q.* What was he doing ?
" *A.* He was shoving this float around the end of the pile-driver. He had a pike pole in his hand; standing on the scow, with the end of the pike pole on the pile-driver. He was on the lower end. There was two or three other gentlemen there.

" *Q.* What caused him to fall in ?

" *A.* I think the pike pole slipped,—stuck in the timber and slipped out; and I think he overbalanced himself, and fell in.

" *Q.* What was done to try to rescue him?

" *A.* Well, I went out and threw him a plank. The plank did not reach him; so I jumped in the boat, and went out to get him. Joe Le Bow and I went out."

Mr. Bethune, one of the men who was pulling in the line, heard the cry that Fisher had fallen overboard, and ran around, expecting to pull him up; but by the time he got there Fisher was ten or twelve feet away,—carried down by the stiff current of the river, which was pretty strong there. When he first saw him in the water the pole was under his left arm. The yawl-boat was not at hand, it having been taken, by direction of the foreman, to get some piles which were four or five hundred feet distant. The other small boat was tied in the slip, about 100 feet away, and Powers and Le Bow ran and got into it, and attempted to rescue Mr. Fisher from drowning. They had succeeded in getting within eight or ten feet of him, when he sank from their sight, and was drowned.

Plaintiff was appointed administratrix of his estate, and brought this suit to recover damages from the defendant for his death. It appeared in the testimony, and was not disputed, that Fisher had been in the employment of the Grand Trunk Railway for six or seven years, and had been engaged in the same and similar work as he was at the time he was drowned. That he had worked upon a scow of similar construction, although smaller, and was familiar with the work for which he was employed, and with its exposures and dangers, which, whatever their nature, were open and apparent.

The duty of the defendant towards the deceased, and

the violation of that duty, are alleged in the plaintiff's declaration as follows:

"And plaintiff avers that the location of said slip or landing at the place aforesaid was in a dangerous place for men to work,—one of great hazard, as workmen engaged in the construction of said slip or landing were liable to fall into the said river, and liable, from the nature and character of the work required of such workmen, under the circumstances, to be knocked, brushed, pitched, or tossed into the river and be drowned, unless proper vigilance was kept over the men, and proper appliances were constantly kept on hand to rescue any who might fall or otherwise get into the river, from the nature and dangerous character of the employment; all of which was then and there known to defendant.    *    *    * Yet the said defendant, not regarding its duty in that behalf, and not using due care to keep workmen from falling into the river, while engaged at work on said slip, and not keeping on hand proper appliances to protect and prevent workmen from falling into the river, but were negligent in that behalf, and were also negligent in not keeping on hand the proper boats, floats, or any other means or devices that could be readily used to save from drowning any of the workmen who, while employed in and about said work, might fall and did fall into said river."

And it is further alleged that deceased, while using due care, was, by and through such neglect of duty on the part of defendant, drowned.

At the close of the plaintiff's testimony the court directed a verdict for the defendant, on the ground that from the evidence it appeared that, whatever risks there were in regard to the employment, they were not concealed, but were open and visible, and known to the deceased; and that he must be deemed to have accepted and continued in the employment with reference to those known risks.   We think the court was fully justified in so holding.  *Swoboda v. Ward,* 40 Mich. 423; *Balle v. Leather Co.,* 73 Id. 158 (41 N. W. Rep. 216); *Kean v. Rolling Mills,* 66 Id. 277 (33 N. W. Rep. 399); *Melzer v.*

*Car Co.*, 76 Id. 94 (42 N. W. Rep. 1078); *Berger v. Railway Co.*, 39 Minn. 78 (38 N. W. Rep. 814); *Woods v. Railway Co.*, Id. 435 (40 N. W. Rep. 510).

Judgment must be affirmed.

The other Justices concurred.