ELMER DYSINGER v. THE CINCINNATI, SAGINAW &
               MACKINAW RAILWAY COMPANY.

*Master and servant—Assumption of risk by employé.*

1. The books make a clear distinction between cases where risks
   are voluntarily assumed, and those where the servant acts under
   orders or defers to the superior judgment of the master.
2. Plaintiff, a brakeman on defendant's freight train, had his arm
   caught between two dead-woods while attempting to draw a
   coupling pin, stepping in between the cars, while the slack
   was being given, to do so.  No claim is made that the road-
   bed or draw-bar or dead-woods were defective or out of order,
   and plaintiff was of mature age, possessed of all of his faculties,
   and did not lack ordinary intelligence.  And it is held that plaint-
   iff was exposed to no extra hazard, nor set at work which he
   had not sought and engaged to do, and that he must be held
   to have assumed the ordinary risks of the employment, among
   which was the one that he encountered.

Error to Shiawassee.    (Newton, J.)    Argued Novem-
ber 18, 1892.    Decided December 2, 1892.

Negligence case.    Defendant brings error. ' Reversed.
The facts are stated in the opinion.

*McKnight, Humphrey & Grant,* for appellant.

*Watson & Chapman,* for plaintiff.

McGRATH, C. J.    Plaintiff had his arm caught between
two dead-woods while attempting to draw a coupling pin.
He stepped in between the cars while the slack was being
given in order to enable him to draw the pin.    No claim
is made that the road-bed or draw-bars or dead-woods were
defective or out of order.

Plaintiff was between 23 and 24 years of age at the time
of his employment.    He had never had any experience as

brakeman, but had lived in the vicinity of a railroad station, and was frequently at the station and around the cars while they were being handled at the station. He had, within six or eight weeks prior to his employment, applied two or three times to one Bryant, a station agent, to get him a position as brakeman. The agent had no authority to employ him. On the 23d day of February, 1890, plaintiff was engaged at Brent Creek, a station just north of Flushing, in loading some logs for a shipper. After the logs were loaded, plaintiff rode to Flushing on the train with the logs, and he claims to have applied to the conductor of that train for employment as brakeman, but the conductor informed him that he had no authority to take him on in the capacity of brakeman. When the train arrived at Flushing, the conductor reported by wire to Mr. Gardner, the manager at Saginaw, that he was short one brakeman. Bryant sent the message, and testifies respecting the hiring as follows:

"I think as I sent that message in to Mr. Gardner he was at the wire on the other end. I think he told me to tell Mr. Hanson that he would have a brakeman for him when he came in that night. Then I spoke to Mr. Gardner, and says, 'There is a young man here that would like to go on braking.' I think the conversation was like this: 'Tell Mr. Hanson to take him on.'"

Bryant also testifies that he—

"Saw him around the depot a good deal where they were switching, and working around there. He had been around the depot more or less ever since I had been there, and I thought probably he would make a good brakeman."

The conductor took plaintiff on, and the train went to Durand that night, and remained there until the next morning. The conductor says:

"I told him I didn't want him to do any coupling or anything until he got onto it; to watch us fellows what

we did for a few days, and he could get the hang of things, and he would be all right."

The other brakeman, Davit, who was upon the train, says:

"I told him he wanted to be very careful. He had been riding around on them cars all day that didn't have any dead-woods whatever. I says: 'So you are going to work here? You want to be very careful, and not get hurt.' I told him not to take any chances whatever. 'Be very careful about the dead-woods on the cars, as we handle all kinds of cars.'"

In the morning, at Durand, plaintiff was sent to flag a train, and then to locate other cars that were to be taken on at that point. Several cars were pulled out, Davit doing the coupling and uncoupling. Plaintiff says he was there, but did not cut off the cars; that he didn't see Davit do it; that he didn't look, and "don't know why" he did not; that the reason why he did not observe how it · was done was that he was not instructed to. Finally they (Davit and plaintiff) were sent after a car which was upon a side track. Plaintiff opened the switch, and Davit made the coupling, threw the switch after the car was pulled out upon the main track, and, giving the signal for slack, told plaintiff to pull the pin. Plaintiff stepped in between the cars to pull the pin, and his arm was caught between the dead-woods.

Plaintiff's claim is that he had had no experience; that he had informed both Bryant and the conductor, when he applied to them for employment, that he had had no experience; and that it was the duty of defendant to instruct him before sending him to couple or uncouple cars. Both Bryant and the conductor deny he so informed them, but the case must be determined here upon plaintiff's testimony.

It is not necessary to determine whether the knowledge possessed by Bryant, to whom plaintiff had several times

applied for a position, was the knowledge of the company; but conceding, for the purposes of this case, that it was, it by no means follows that the defendant must be held liable. Plaintiff was not an infant, nor a person of weak intellect. He was of mature age, possessed of all his faculties, and did not lack ordinary intelligence. He applied, not for an unnamed position, but for employment as brakeman. He sought the employment voluntarily. He was his own master, unfettered by anything except consideration for his own interests, which prompted him to seek and enter upon the employment, and to incur its hazards. The position sought is ordinarily deemed and commonly regarded to be one of danger. In the course of the employment, cars are to be coupled and uncoupled, coupling pins are to be inserted and withdrawn in the presence of draw-bars and dead-woods. The danger is not concealed, but apparent. Plaintiff was exposed to no extra hazard, nor set at work which he had not sought and engaged to do. The business required no special skill or training to foresee that it was dangerous, and the injury was caused by a condition that was apparent. The books make a clear distinction between cases where risks are voluntarily assumed, and those where the servant acts under orders or defers to the superior judgment of the master. Plaintiff must be held to have assumed the ordinary risk of the employment. He cannot now be heard to say to defendant:

"I sought the position with a full knowledge of my inexperience, but you knew of my inexperience, and therefore insured me against injury. I solicited the service, but you took all the chances. You owed me a duty, but I owed none to myself. You were negligent; but, although I sought this very employment, knowing that it was a dangerous one, and that I had no previous experience in it, I am free from fault."

The judgment must be reversed, and a new trial granted.

The other Justices concurred.