CHARLES A. LAPIERRE v. THE CHICAGO & GRAND TRUNK RAILWAY COMPANY.

*Master and servant—Railroad companies—Negligence—Assumption of risk—Fellow-servants.*

1. It cannot be said, as matter of law, that a railroad company is negligent in using a gang plank in the unloading of freight, of the same character as those used by it without accident for 15 years.

2. An experienced employé, who had been engaged for a year prior to an accident caused by such a gang plank slipping out of the car, into which one end had been placed while unloading freight onto the adjoining platform, and who had been during that time familiar with the plank and the manner of its use, will be held to have voluntarily assumed the attendant risk.

3. Such an employé cannot be heard to complain of an injury, incurred while using the plank in the ordinary manner, on the ground that it was not furnished with hooks, spikes, or cleats to prevent its slipping, it appearing that he had used the plank for a year prior to the accident without protest or objection, or even a suggestion that it was unsafe, or a request that the hooks, spikes, or cleats be supplied.

4. A conductor of a freight train, under whose direction a brakeman is assisting in the unloading of freight, is the fellow-servant of the brakeman.

Error to Calhoun. (Smith, J.) Argued February 15, 1894. Decided February 27, 1894.

Negligence case.  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*Howell & Carr*, for appellant.

*Geer & Williams*, for defendant.

GRANT, J.  Plaintiff was a brakeman on a local freight train of the defendant, and was injured December 4, 1886, under the following circumstances:  The train had reached Vicksburg, where it became necessary to unload some freight.  The bottom of the car and the platform were on a level.  The heavier freight was placed upon a truck, which the plaintiff wheeled over a gang plank to the platform.  While engaged in this work, the end of the gang plank slipped from the car, and plaintiff, with his load, fell to the ground, a distance of about 3½ feet, whereby he was injured, and, as he claims, permanently.  He resumed the same employment for the defendant the 1st of the following February, and continued therein for nearly six years, during which time he earned and was paid nearly $3,000.  He then left the company's employ, and instituted this suit.

The gang plank was 10 feet long and 2 feet wide, constructed of two planks fastened together with rods running through them, and beveled off at each end.  The truck used was 18 inches wide.  The space between the outside of the car and the edge of the platform was 6 feet 6 inches.  Some of the freight to be unloaded consisted of boxes of iron axles, weighing from 550 to 650 pounds each.  In unloading, the plaintiff was assisted by another brakeman, while the conductor was present, and checked off the freight as it was unloaded.  Twelve boxes had been removed in safety.  The accident happened while plaintiff was wheeling off the thirteenth box.

Vicksburg is the junction of the defendant's road and

the Grand Rapids & Indiana. A Y is constructed for the use of both roads. Within the Y are situated the freight house and sheds used by both roads. The track of the Y, connecting the two roads, is on the north and west sides of the freight house. Near this track, and opposite the freight house, is a raised platform, the edge of which is from 2 feet 3 inches to 2 feet 5 inches from the outside of a freight car. This side track and platform were used mainly for interchange traffic between the two roads. It was not customary to use it for local freight trains. The unloading there was done in the same manner, but with a shorter gang plank. Plaintiff insists that it was the duty of the defendant to run its local freights onto this Y when it had heavy packages to unload, but admits that it was customary and proper to unload lighter packages from the main track. The defendant's assistant superintendent testified that the side track was not used for conducting business that would naturally be done by the local freight train. The only other act of negligence alleged is that the gang plank was not supplied with hooks, spikes, or cleats to hold it from slipping.

At the conclusion of the evidence the court directed a verdict for the defendant, holding that the plaintiff had not established a cause of action.

The ruling was correct, for the following reasons:

1. No negligence was established against the defendant. Gang planks of the same character had been used by the defendant for 15 years, and no accident had before occurred in their use. It cannot be said, as a matter of law, that it was negligence to use such a tool. While a greater degree of precaution might have suggested the propriety of using hooks or spikes which would render an accident less likely to occur, still experience had not shown any necessity therefor, nor is it apparent that there is any danger in the use of a plank with a beveled edge 6 or 8 inches in

length, lying level with the platform and the car, the end of which may rest from 20 to 40 inches within the car from which the goods are to be taken. Plaintiff says that the end of the plank lay in the car about 8 inches. Defendant was using an appliance which long experience had shown to be safe. The law did not require it to do more.

2. Plaintiff voluntarily assumed the risk. He was an old and experienced railroad employé. He had been engaged upon this same train for nearly a year. The business was done in the same manner that it had always been done before. He was familiar with it. All the dangers connected with it were as apparent to him as to any one. The loads were not of such size or weight as to indicate any extraordinary risk or hazard in removing them in the usual way. It is too apparent to require argument that if the end of the gang plank had been placed a proper distance within the car, and proper care had been exercised in pulling the truck upon the plank, the accident would have been avoided. He had unloaded 12 similar loads in safety. Why did the accident happen upon the removal of the thirteenth? There must have been some reason which did not exist when any of the other 12 loads were removed. If the plank had gradually worked towards the edge of the car when each load was removed, or if plaintiff failed to place it a proper distance within the car at the beginning, these were matters over which he had the entire control, and the exercise of common prudence on his part would have prevented the injury.

3. The plaintiff had used this gang plank, and similar ones, during his service. He had raised no objection or protest, nor had he even suggested that they were unsafe, or requested that they be fixed with hooks, spikes, or cleats. The law is too well settled to require the citation of authorities that where one uses a tool or appliance so simple in construction as this, without protest or objection,

he cannot be heard to complain of an injury incurred while he is using it in the ordinary manner.

4. If it was negligence not to place the car upon the side track for unloading, or to direct the plaintiff to remove packages so heavy as to be unsafe for conveyance over the plank, these were the negligent acts of the conductor under whose direction the work was done, and were the acts of a fellow-servant. It may, however, be very properly remarked that the propriety of unloading these packages at the place, and with the appliances, was not raised either by the plaintiff or his fellow workmen.

Judgment affirmed.                                    •

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. LONG, J., did not sit.