OF

## THE STATE OF IOWA

AT

### DES MOINES, OCTOBER TERM, A. D. 1894

AND IN THE FORTY-EIGHTH YEAR OF THE STATE.

---

W. F. YEAGER, by His Next Friend, J. S. YEAGER, Appellant, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY.*

**Master and Servant:** DIRECTING VERDICT. A railroad company is
1 not bound to instruct one who begins his first work as brakeman with it, how to mount moving cars or to point out the dangers incident to such mounting, when he knew by observation the manner of mounting and dangers attending it.

*Appeal from Cedar Rapids Superior Court.*—HON. JOHN T. STONEMAN, Judge.

MONDAY, DECEMBER 17, 1894.

---

*The figures on the left of the syllabi refer to corresponding figures placed on the margin of the case at the place where the point of the syllabus is decided.

Action to recover for personal injuries sustained by plaintiff, a minor, while in the employ of the defendant. When plaintiff had offered all his evidence, the court, on motion of the defendant, instructed the jury to return a verdict for the defendant. Plaintiff's motion for a new trial was overruled, and judgment entered on the verdict. Plaintiff appeals.—*Affirmed.*

*Rickel & Crocker* and *M. P. Smith* for appellant.

*S. K. Tracy* and *J. C. Leonard* for appellee.

Given, J.—I. The questions discussed involve a consideration of the facts as shown in the evidence, and which are substantially as follows: Prior to November 2, 1891, the plaintiff, then over nineteen years of age, applied to the defendant's train master for employment, and was promised a position when a vacancy occurred. Later, he was informed that there was a place for him, but that he must have his father's written consent that he be employed, which consent he obtained. On November 2, 1891, he was directed to report for duty to the conductor of a certain freight train that was to go north from Cedar Rapids about 10 or 11 o'clock that night. On reporting, he was directed to take the place of front brakeman, without any instructions having been given him. When the train commenced to move, plaintiff was on the ground, in advance of it, and it occurred to him that a brake on the front car—a box car—was set, and should be loosened; and he attempted to mount the car by the side ladder on the front end, for that purpose. The night was damp and foggy, and at the time plaintiff attempted to mount the car it was enveloped in steam from the engine so that he could see but little, if any, by the light of the lantern he carried. The train was moving north and plaintiff

attempted to mount the car on the east side, by catching the ladder and placing his left foot against the oil box, preparatory to putting his right into the stirrup at the foot of the ladder.   His foot slipped off the oil box, and jerked his hold upon the ladder loose before he got the other foot in the stirrup; thus causing him to fall with one foot across the rail, which foot was run over, and injured so as to necessitate amputation.   At the time plaintiff was employed it was known to defendant's train master who employed him that he had no practical experience in train service as brakeman or otherwise.   Plaintiff was a young man of at least ordinary physical strength and intelligence, had been in school for some fourteen years, and had lived near to defendant's line all his life, his father being employed by defendant as a trackman during part of that time. For some time preceding his injury he had been in employments near to railroad yards and tracks, where he could and did observe, to some extent, the manner in which trainmen performed their duties.   He says: "I had frequently seen brakemen climb on the cars with the ladder at the side, and put their foot on the oil box." The evidence as to the way in which to mount a moving box car is as follows:   "The general custom in getting on freight cars depends on the side of the car you are on and as to the end of the car the ladder happens to be on.   If the car is moving north, and the ladder is on the front end on the side that you are on, and you are on the right side, the first step would be on the oil box.   Catch hold of the first and second rungs of the ladder, and from there into the stirrup, and then go hand over hand.   These stirrups, on the average cars are about thirty inches above the ground."   Another witness states it thus:   "If the cars are moving any way fast, they move with them, in the same direction, and get hold, with the hand, of the ladder, and catch

the oil box with their foot, catch the stirrup, and go on top. The oil box is used to keep you from swaying around against the car. It is to steady yourself. It is to protect yourself from being jerked against the car, and also gives you a chance to get your foot in the stirrup. The stirrups are too high to get your foot in, and the hand hold too. There is not much weight to go on the oil box. The weight is on your hands. The car has got you. It is more to steady you than anything else."

II. Following the order pursued in the arguments, our first inquiry is whether there is such evidence of either of the acts of negligence charged as that the court should have overruled defendant's motion for a verdict. In *Meyer v. Houck*, 85 Iowa, 327, 52 N. W. Rep. 235, this court announced the rule as follows: "Our conclusion is that when a motion is made to direct a verdict the trial judge should sustain the motion, when, considering all of the evidence, it clearly appears to him that it would be his duty to set aside a verdict, if found in favor of the party upon whom the burden of proof rests." This rule has been uniformly followed since its announcement, and must govern in this inquiry. It is charged that the defendant was negligent in three particulars, namely: In omitting to instruct or caution plaintiff as to his duties, hazards, or responsibilities as a brakeman; that the engineer "carelessly and negligently caused, suffered, and permitted such an escape of steam from said engine as to completely envelope said W. F. Yeager at the time he attempted to get aboard of said car;" that "the defendant had carelessly and negligently allowed the usual iron gate or cover of said oil box to fall out or become lost, and had carelessly and negligently inserted in lieu thereof a board or other material or substance, which projected above said box in such a manner as to render the foot-

ing of the said W. F. Yeager insecure, and which caused
his foot to slip off from the same, because of its shape,
position and improper length, and the angle at which
it was placed, and precipitated him under the wheels
of said car." We may here say that we do not think
there was evidence to support the last two charges of
negligence, such as to require either to have been sub-
mitted to the jury. There was not sufficient evidence
that a wooden gate was used, or that it was negligence
to use one, nor that the kind of gate was the cause of
the accident, to require that charge to be submitted to
the jury. There is an entire absence of evidence that
the engineer was negligent, as charged. This leaves us
to inquire whether the defendant was negligent in omit-
ting to instruct or caution plaintiff as to his duties, haz-
ards or responsibilities as a brakeman.

III. Appellant states the law as to the duty of the
master to instruct and warn the servant to be as fol-
lows: "That he must give him proper instruc-
tions, if he knows that the servant is ignorant or
inexperienced, so as to enable him to perform
his duties with reasonable safety to himself; and if the
employment is dangerous or hazardous this rule is the
more imperative. If he knows that the servant is igno-
rant and inexperienced, and that he may not fully
appreciate or apprehend the dangers of his employ-
ment, he must warn and caution him of the dangers of
the employment; and more especially is this true if the
employment is essentially dangerous and hazardous."
This statement of the law, as well as the cases cited,
and others to which we have referred, show that the
duty of the master to instruct and warn the servant
only arises as to dangers which the master knows, or
has reason to believe, the servant is ignorant of. It
does not arise as to dangers known to the servant, or
that are so open and obvious as that by the exercise of

care, he would know of them.    See *Reynolds v. Railroad Co.* (Vt.), 24 Atl. Rep. 134; *Railway Co. v. Davis* (Ark.), 18 S. W. Rep. 629; *Dysinger v. Railroad Co.* (Mich.), 53 N. W. Rep. 825; *Levy v. Bigelow* (Ind. App.), 34 N. E. Rep. 128; *Railroad Co. v. Henderson* (Ind. Sup.), 33 N. E. Rep. 1021; *Merryman v. Railway Co.*, 85 Iowa, 634, 52 N. W. Rep. 545; *Downey v. Sawyer* (Mass.), 32 N. E. Rep. 654.

Appellant contends that it is the duty of the master to instruct his servant, "even when the danger or hazard is *patent*, if through youth, inexperience or other cause the servant is incompetent to fully understand the nature and extent of the hazard." In such case the servant would be ignorant of the danger, therefore, within the rule already stated. It is true the plaintiff was not experienced in mounting moving cars, but defendant could not impart to him that which could only be acquired by practice. The plaintiff did know, from observation, the manner of mounting moving cars and of the dangers attending it. Therefore, it was not required that the defendant should instruct or warn him with respect thereto.

There being no sufficient evidence to support a finding that the defendant was negligent in either of the particulars charged, there was no error in instructing the jury to find for the defendant.—*Affirmed.*