SCHNEIDER *v.* WOLVERINE PORTLAND CEMENT CO.

MASTER AND SERVANT—DANGEROUS APPLIANCES—ASSUMPTION OF RISK.

A capable dredge engineer, employed to erect and repair machinery, assumes the risk of injury from the slipping of a heavy casting while being lowered into the hold of a dredge.

Error to Lenawee; Chester, J. Submitted June 13, 1906. (Docket No. 66.) Decided October 1, 1906.

Case by Minnie B. Schneider, administratrix of the estate of John M. Schneider, deceased, against the Wolverine Portland Cement Company, for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Reversed.

*H. H. & B. E. Barlow* (*Rollin H. Person*, of counsel), for appellant.

*Smith, Baldwin & Alexander*, for appellee.

Moore, J.   In February, 1904, John M. Schneider, an employé of defendant, while at work with others in placing a heavy casting in one of defendant's boats, was so seriously injured that he died in a few days thereafter. This action is brought to recover the damages therefor. From a judgment in favor of the plaintiff, the case is brought here by writ of error.

The negligence charged in the declaration is that the defendant ordered plaintiff to assist in work more dangerous than that for which he was employed, and in which he had no experience, without warning him of the dangers attending the same; that the foreman was incompetent; and that the company failed to supply proper appliances for moving the casting.   It is the claim of defendant that the work was in the line of plaintiff's employment; that due care was observed in the employment of the foreman; that as a matter of fact he was competent; that plaintiff assumed the risk.   The important question in the case is whether a verdict should have been directed in favor of defendant.   The casting was to be lowered through an opening in the deck of a flat-bottomed boat, said to be 18 or 20 feet wide and 60 feet long.   The opening is variously described by the witnesses as from 6 to 10 feet wide and 8 to 12 feet long.   The casting is called a barrel, and is said to be shaped like a plug hat, the rim being 54 inches across and the barrel 46 inches high.   The casting weighed 3,300 pounds and was to be lowered 8 to 10 inches below the surface of the deck, where it would rest on timbers. The boat itself was frozen in the ice.   The foreman and four men were employed in the work of taking the casting from the cars, placing it upon a logging wagon, which was brought to within a few feet of the boat.   Skids 4 or 5 inches thick and 6 or 8 inches wide, and 10 or 12 feet long were laid from the wagon to the deck of the boat at a slight incline; the ends resting on the deck a little higher

than those on the wagon. Pieces of gas pipe about 3 inches in diameter were placed on top of the skids, the casting on top of the gas pipes, the rim down, and the casting was successfully pinched along with crowbars, up the incline and across a portion of the deck until it was near the opening, still resting upon the pieces of gas pipe, which rested on the skids, which in turn rested on the deck which was nearly if not quite level. It was then proposed to lift up the casting withdraw the skids from under it, place the west end of the skids on a timber in the hold of the boat about 8 or 10 inches below the deck, with the east ends resting on the edge of the deck. The foreman directed that the south end of the casting be raised and the skid be withdrawn by pulling it to the west. The deceased jumped into the opening in the deck, took hold of the skid and ·pulled it towards him. Up to this point all of the witnesses are practically agreed. From this point, as to what happened they disagree. It is the claim of some of the witnesses for the plaintiff that it was necessary for the deceased to get into the opening in the deck, that he had withdrawn the skid from under the casting and placed the west end on the timber below the deck, the east end resting on the deck, that by direction of the foreman the south end of the casting was lowered, when it canted, the gas pipe on the north skid rolled off, and the casting lurched into the hold, crushing the deceased.

Witnesses for the defendant claim that it was not necessary for the deceased to go into the opening. All the witnesses agree he went there without being directed to do so. It is also claimed that deceased was told not to drop the west end of the skid too soon, but failed to heed the injunction; that the skid operated as a lever, the long end being in the hands of the deceased, the edge of the deck a fulcrum, the short end under the casting and when the west end was lowered, the east end hitched the casting forward and precipitated it upon the deceased.

In addition to the claims of the plaintiff already stated, it is urged that ropes ought to have been placed about the casting to hold it from being tilted forward. ·

Many interesting questions are raised and discussed by counsel. In our view of the case a disposition of one of them will end the case. The record discloses that deceased was a bright, capable man, 34 years old. He had been in defendant's employ nearly if not quite five years. He commenced as a common laborer, and at the time of his death was a dredge engineer. He had helped to build the plant and the boats and to put the machinery in them. It was part of his duty to assist in making repairs and the year before he had assisted in lowering a similar casting into a similar opening. The process of moving this casting and lowering it was not a complicated one. It was as open to the deceased as to any one else. It is absurd to say he was not acquainted with the law of gravity, that he did not know he was assisting in moving a heavy body, and that if it got started down an incline it could not be controlled. The testimony of all the witnesses is that when the deceased went into the hold no one supposed the situation was unsafe. Had the skids and rollers been successfully removed while the casting was still on deck it is not likely the accident would have happened. The incline of 8 or 10 inches in a length of 8 or 10 feet was not great. Whatever the situation was, it was open to deceased. It goes without saying that a man engaged in employments like deceased's for four or five years must have had more or less experience in moving and seeing moved heavy bodies. The testimony does not leave that question in doubt. This, then, being the situation, we think it must be said he assumed the risk. See *Fisher* v. *Railway Co.*, 77 Mich. 546, and the many cases cited therein. *Dysinger* v. *Railway Co.*, 93 Mich. 646; *La Pierre* v. *Railway Co.*, 99 Mich. 212; *Welch* v. *Brainard*, 108 Mich. 38; *Pilucki* v. *Spring Works*, 117 Mich. 111; *Nephew* v. *Whitehead*, 123 Mich. 255; *Foley* v. *Gaslight Co.*, 127 Mich. 671, and the cases cited therein; *Page* v. *Food Co.*, 142 Mich. 17.

Judgment is reversed, and new trial ordered.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.