GILLETTE v. GRAND TRUNK WESTERN RAILWAY CO.

1. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—ASSUMPTION OF RISK—DIRECTED VERDICT.

In an action for personal injuries by a fireman against a railroad company for negligence in permitting a rope to hang over the running board of an engine, on which plaintiff tripped and was injured, the accident happening in the daytime, and the conditions being in plain sight, and having continued for some time, *held*, that plaintiff assumed the risk.

2. SAME—HANDRAIL—DEFECTIVE CONDITION.

Where plaintiff's duties were such that he frequently made use of the running board and handrail on an engine, the defective condition of which must have been known to him, *held*, that he assumed the risk.

3. SAME—SAFE PLACE—ASSUMPTION OF RISK.

While it is the rule that the duty of the master requires him to furnish his servant a reasonably safe place in which to work, and reasonably safe appliances to work with, which duty he cannot so delegate as to relieve himself of responsibility, yet, where the defects and dangers are obvious and known to the servant, who makes no complaint, he will be *held* to have assumed the risk.[1]

Error to Calhoun; North, J. Submitted October 14, 1915. (Docket No. 98.) Decided June 2, 1916.

Case by Arthur H. Gillette against the Grand Trunk Western Railway Company for personal injuries. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Affirmed.

*Henry R. Rathbone* and *Maxwell B. Allen,* for appellant.

*Harrison Geer* (*W. K. Williams,* of counsel), for appellee.

BIRD, J. Arthur Gillette was employed as a fireman for defendant on one of its freight locomotives, running between Battle Creek and Milwaukee Junction. On the morning of the 8th day of June 1914, he was going east on his run, and when near Hazlett Park, he was ordered by the engineer to go to the front of the locomotive and shut the door of the headlight. The train was then running about 10 miles an hour. Plaintiff obeyed the order. He opened the window in front of his seat on the left-hand side of the locomotive,

---

[1] For authorities on the question as to whether a servant may assume the risk of dangers created by the master's negligence, see notes in 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215.

passed through it, and proceeded along the running board to a point nearly over the steam chest, when he stepped down on the lower running board, which was about 3 feet long, and from there onto a step provided for use when working with the headlight. He closed the door, and stepped back onto the short running board, and as he did so he claims his foot caught in the loop of a rope which was used in fastening the bail of the classification light to the upper handrail. This he claims had the effect of throwing him slightly off his balance. In the attempt to regain it the guard rail turned in the sockets and broke his hold, and in consequence thereof he fell to the ground and was severely injured.

The negligence counted upon for a recovery was the act of defendant in permitting the rope to hang in close proximity to said running board, and the failure of defendant to fasten the hand or guard rail in the socket by pin or set screw, so that it would not revolve therein. It was charged that the failure of defendant in these respects resulted in making the place unsafe for plaintiff. Counsel for defendant maintains that the trial court was right in holding that plaintiff assumed the risk, and it is further contended by them that the plaintiff failed to make out a case of negligence against the defendant.

1. It was shown that the classification lamp, which was used to designate the kind of train it was, was fastened to the guard rail in question by means of a bracket, and the lamp was fastened to that by a clamp. The rope was used to fasten the bail of the lamp to the upper rail, a piece of which hung down over the short running board. If it can be said to be an act of negligence on the part of the defendant in permitting the rope to hang in this way over the short running board, we think it must be held that plaintiff assumed the risk of passing it, as it was daylight, and the rope

was in plain view, and the testimony showed that, it had been in use for some time.

2. We are also of the opinion that the defect in the handrail, if it were one, was known to the plaintiff. True, he says he had not discovered it until the day of the accident; but his testimony, taken as a whole, fairly shows that he must have been acquainted with its condition. After testifying that he did not know how far the handrail would turn in the socket, he was asked:

"*Q.* Half way around?
"*A.* I couldn't say.
"*Q.* But to take hold of it, it would turn a little one way or the other?
"*A.* Yes, sir."

As indicating the opportunity he had of learning of its condition, and his frequent contact with it, the following excerpts taken from his testimony will show:

"I as fireman have passed along these walks a great many times. When I got out of my cab, I got out on this running board, and as soon as I got on the running board I took hold of this rail to steady myself. I had been there at times when the train was running. Whenever occasions would require it, I would go along this running board with my hand ahold of the handrail. When I have gotten to the end of the running board, I had to step down to another running board, a distance of perhaps two feet or a little better, and I would still, while walking along that short running board, keep hold of the rail, or lower handrail."

"Those lamps were fastened right to the short rail, and every time I went to clean the cage I would have to use that to get up."

"Coming from Milwaukee Junction to Durand, if we had to take a siding at any of the stations, we would have to cover the headlight. That was part of my duties, and to cover that headlight I would have to walk along these running boards, and then step upon these steps or brackets that are on the side of the engine to put the cover on to shut off the light."

"As soon as it became dark, I got out and lighted the lamps."

He further testified that it was his duty to clean and light the classification lamps, to clean the inside of the headlight, to clean the jacket above the running board, and when he attended to these duties he made use of the running boards and handrails.

It is a rule well understood that the duty of the master requires him to furnish his servant with a reasonably safe place in which to work, and with reasonably safe appliances to work with, and he cannot so delegate this duty as to relieve himself of responsibility. *Swoboda* v. *Ward,* 40 Mich. 420; *Quincy Mining Co.* v. *Kitts,* 42 Mich. 34, 39 (3 N. W. 240); *Parkhurst* v. *Johnson,* 50 Mich. 70 (15 N. W. 107, 45 Am. Rep. 28); *Smith* v. *Car Works,* 60 Mich. 501, 502 (27 N. W. 662, 1 Am. St. Rep. 542); *Marshall* v. *Furniture Co.,* 67 Mich. 167 (34 N. W. 541, 11 Am. St. Rep. 573); *Van Dusan* v. *Letellier,* 78 Mich. 492 (44 N. W. 572). But in connection with this rule it is held that, where the defects and dangers are obvious to the servant, he will be regarded as having assumed them. *Kean* v. *Rolling Mills,* 66 Mich. 277 (33 N. W. 395, 11 Am. St. Rep. 492); *Illick* v. *Railroad Co.,* 67 Mich. 632 (35 N. W. 708); *Fisher* v. *Railway Co.,* 77 Mich. 546 (43 N. W. 926); *Pennington* v. *Railway Co.,* 90 Mich. 505 (51 N. W. 634); *La Pierre* v. *Railway Co.,* 99 Mich. 212 (58 N. W. 60); *Peppett* v. *Railroad Co.,* 119 Mich. 640 (78 N. W. 900). If by taking hold of the handrail it would turn a little one way or the other, as plaintiff testified, the conclusion is irresistible that he must have known of its condition before the day of the accident, as his duties required him to go out upon the running board several times each trip which he made. At these times he says he took hold of the rails. The plaintiff had been employed as a fireman by defendant for over a year; he had been employed as a fireman on this particular

engine from the 6th day of February down to the 8th day of June, at the time he was injured, and when on his run he was daily in contact with the handrail in question. It was also shown that the handrails on the other engines which he fired were constructed the same way. It does not appear that he made any complaint to any of his superiors that the handrail was out of order, or that it was in need of repairs, or that it was dangerous. We think the trial court was right in holding that plaintiff assumed whatever risk there was arising therefrom.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.